SOWDEN & CO. v. CRAIG.

## I. Per CURIAM.

1. Notice: *lis pendens*. The pendency of an action affecting real estate, is sufficient to charge third persons with notice thereof.

2. Acknowledgment: BY ATTORNEY. A certificate of acknowledgment to a chattel mortgage executed by attorney prior to the act of February 24, 1858 (Rev. § 2251–54), in the following form, is sufficient: "STATE OF IOWA, DES MOINES CO.—Before the undersigned, a notary public for said county, came J. M. B., agent for N. M. B. and R. S. C., who are personally known to me to be the identical persons whose names are affixed to the foregoing bill of sale, as grantors, and they acknowledged the same to be their voluntary act and deed," etc.

3. Fixtures: CHATTEL MORTGAGE: NOTICE: MECHANIC'S LIEN. A chattel mortgage upon machinery which afterward becomes, with the knowledge and consent of the mortgagee, attached to the realty, by being placed as fixtures in a mill, will not be affected by the lien of a mechanic having notice of the facts, for work done on the mill; and no person chargeable with such notice can, by purchase of the real estate, or otherwise, acquire, from or through the mortgagor, any title to such fixtures paramount to the mortgagee.

4. —— The constructive notice imparted by the recording of such mortgage before the affixion of the chattels is, it would seem, as effectual to protect the rights of the mortgagee as actual notice would be.

## II. Per DILLON, Ch. J., dissenting.

5. —— When machinery, with the consent and co-operation of the person holding a chattel mortgage thereon, has been placed in, and so permanently attached to a building, as to become a part of the realty, the record of such mortgage does not, under the statute, impart constructive notice to a mechanic claiming a lien upon such real estate, for work done on the building, nor affect the rights of a purchaser of the real estate without *actual notice* of the mortgage.

*Appeal from Des Moines District Court.*

TUESDAY, DECEMBER 11.

FIXTURES: MECHANIC'S LIEN: HOW AFFECTED BY RECORDED CHATTEL MORTGAGE, ETC.—Replevin for two engines, two boilers, one circular saw, one muley saw and appurte-

nances.   Plaintiffs and defendant each claim an absolute title to the property.   Upon the instruction hereinafter noticed, the jury returned a verdict for the defendant, and the plaintiffs appeal.

To understand the questions presented, it is necessary to state the history of the title of the respective parties.

I. *Facts concerning the plaintiffs' title.*

Plaintiffs are machinists doing business in the city of Burlington.   In 1856, they manufactured the engines, boilers and saws now in controversy for Messrs. Burris & Cox, of Burris City (so called) in Louisa county.

On the 29th day of November, 1856, the property was delivered, in Burlington, to Burris & Cox, who, on that day, executed to the plaintiffs a chattel mortgage thereon.

It is under this mortgage that the plaintiffs claim. This mortgage is in the usual form, reciting that it is made to secure plaintiffs $1,350, and that it is the same property "recently purchased by us (Burris & Cox) of Sowden & Co."   It contains this provision:  "But, if default be made in the payment of said note, the said Sowden & Co. are hereby authorized to cause the aforesaid engines, boilers and saws to be sold at public auction," etc.   This mortgage was signed thus:

"N. W. BURRIS,
            J. M. BLOOMFIELD,
            R. S. COX."

The certificate of acknowledgment was in this form:

'STATE OF IOWA,  }
    DES MOINES COUNTY, } *ss.*     Before the undersigned, a notary public for said county and State, this day came J. M. Bloomfield, agent for N. W. Burris and R. S. Cox, who are personally known to me to be the identical persons whose names are affixed to the foregoing bill of sale, as grantors, and they acknowledged the same to be their voluntary act and deed."

This was duly signed and sealed by the officer on the 29th day of November, 1856.

The machinery was immediately shipped to Burris City, and plaintiffs, pursuant to contract, sent an agent to set it up in a saw mill, then being erected by Burris, or Burris & Cox.

This agent of the plaintiff presented the bill of sale to Burris, and Burris signed it with his own name, and it was thereupon, to wit, on the 9th day of December, 1856, filed for record, and recorded in the chattel mortgage records of Louisa county. At this time the machinery was in Burris city, one engine on its foundation, but not bolted down, the other was not on its foundation. Plaintiff's agent helped to set up the machinery, and the same was set up in a permanent and substantial manner in the mill. The mill was inclosed, the boilers set on stone foundations, and incased in brick. The engine was set on timbers, locked, bolted and keyed in the timbers of the mill. The machinery was so set up and affixed "that it could not have been taken out without partially taking the building to pieces."

II. *Facts concerning defendant's title.*

The mill was being erected on certain lots in Burris city. Down to December 9, 1856, the title to these lots was in N. W. Burris. On that day, Burris sold the lots (the mill thereon being in process of erection) to one Key. On the 11th of June, 1857, Key sold to Wood, Baker & Co. Defendant's title is derived from a sheriff's sale on a mechanic's lien execution in favor of one Druse.

Druse, as a millwright, commenced work on the mill on the 17th day of January, 1857, and prior to July, 1857, had done work to the amount of $465.

In July, 1857, Druse commenced suit to enforce a mechanic's lien upon the mill, making Burris, Key and Wood, Baker & Co. defendants.

In December, 1858, his lien was established. In January, 1859, the lots on which the mill was situate, and which contained the machinery in question, affixed as aforesaid, were sold to Druse for the amount of his lien. In February, 1860, Druse obtained a sheriff's deed, took possession, and kept it for about two years, when he took the machinery to pieces and removed the same from the mill, and sold the same to Craig, the defendant in the present action.

On the trial Druse testified that "I first learned that Sowden & Co. claimed to have a right to the machinery, in the summer of 1857, after I had completed work on the mill; I had no actual knowledge of the bill of sale before that time."

Defendant, Craig, is not shown to have had any knowledge of any of the transactions or facts now in controversy.

It is relied upon as error that the court refused to allow plaintiffs to introduce in evidence the records and papers in the case of *Wood, Baker & Co.* v. *Sowden & Co.* and *Coolbaugh & Brooks.*

III. *Facts concerning the Wood, Baker & Co. suit.*

In June, 1857, as above noticed, Wood, Baker & Co. obtained title to the mill lots, or an interest therein.

On the 5th day of August, 1857, they brought suit against Sowden & Co. and Coolbaugh & Brooks (assignees of the note secured by the chattel mortgage), to restrain a sale of the engines and boilers now in dispute, and obtained a temporary injunction to this effect. The main ground of this injunction suit was the alleged want of authority on the part of Bloomfield to execute the bill of sale for Burris, under whom they (Wood, B. & Co.) claimed title as good faith purchasers without notice.

This injunction suit lingered along until May, 1863, when, upon hearing, the bill was unconditionally dismissed and the injunction dissolved.

The record in the case of *Wood, Baker & Co.* v. *Sowden & Co.* was offered in evidence by the plaintiffs in the present case, for the purpose of showing that the plaintiffs had been guilty of no laches in asserting their claim to the property in controversy, and for the purpose of showing *notice* to Druse (vendor of defendant) of plaintiff's rights, he (Druse) making his purchase at the sheriff's sale, *pending* the Wood, Baker & Co. suit against the plaintiff. The court rejected the evidence, and the plaintiffs excepted.

IV. *Instruction of the court to the jury.*

After the evidence was in, showing the facts above detailed, the court charged the jury in these words: "There being no conflict in the testimony as to the title and right of possession of the property in controversy, the law of the case is with the defendant, and your verdict must be for him." And it was.

Plaintiffs duly excepted, and assign for error the rejection of the record in the case of *Wood, Baker & Co.* v. *Sowden & Co.*, and the giving of this instruction to the jury.

*Charles H. Phelps* and *B. J. Hall* for the appellants.

1. Parties may control by agreement the character of chattels as such, though attached to the realty, and a recorded chattel mortgage is such an agreement, and notice, when recorded, to subsequent mortgagees or purchasers of the realty. *Frederick* v. *Devol*, 15 Ind. 357; *Tibbets* v. *Moore*, 23 California, 208.

In the former case, the court held that the doctrine that the parties "may control the character, as to being realty or personalty, of movable fixtures, and that subsequent purchasers or mortgagees may be subject to, and have the benefit of such agreement, is settled by numerous cases," citing *Ford* v. *Cobb* (20 N. Y. 344).

*Tibbetts* v. *Moore* is precisely the case at bar.

Plaintiff commenced his action to enforce a mechanic's lien; Brown & Andrews, mortgagees of the realty, and Lambard, mortgagee of the engine and boilers, were made parties. Lambard's chattel mortgage was executed and recorded before the engine and boilers were affixed to the realty, and they were annexed after Brown & Andrews' mortgage was recorded.

The mechanic's lien attached before they were so annexed.

The court gave the chattel mortgage priority over both the mechanic's lien and the mortgage on the realty.

The reasoning of the court is precisely that used by us in our argument for a rehearing.

They held that *Winslow* v. *Ins. Co.*, which had been followed and recognized by them in a former case was inapplicable, drawing the same distinction between it and *Tibbetts* v. *Moore* that we have suggested between it and the case at bar.

2. The law of fixtures is based entirely upon technicalities and legal fiction.

It originated in feudal times for the benefit of the land owners, and originally had no exceptions.

But the necessities of justice and the application of the rules of common sense and enlightened reason have for years been modifying it, until it has now come to be held that the question as to whether the article annexed retains its chattel nature is determined by the intent and agreement of the parties, and wherever it is established that the party owning the realty agreed with the owner of the chattel that the property should remain a chattel, the agreement will be sustained between the parties and those purchasing the realty, and the only exception to this rule is, where the chattel has been so incorporated into the realty as to lose its identity, as brick in the wall, or lumber in the building, or where it has been so annexed that

it cannot be removed without destroying the building, or causing an injury to it altogether out of proportion to the value of the chattel. This doctrine is consistent with reason and common sense. While the contrary is subversive of every principle of justice.

In support of our position we cite the following authorities: *Gould* v. *Goddard*, 14 Barb. 664; *Mott* v. *Palmer*, 1 Comst. 564; *Smith* v. *Benson*, 1 Hill, 176; *Cross* v. *Marston*, 17 Vt. 541; *Ford* v. *Cobb*, 20 N. Y. 346; *White's Appeal*, 10 Barr. 252; *Dame* v. *Dame*, 38 N. H. 429; *Beardsley* v. *Cox*, 4 Zabris. 287; *Kelsey* v. *Drake*, 33 Barb. 410; 35 id. 58; *Hunt* v. *Mallanphy*, 1 Miss. 508; *Mitchel* v. *Friedly*, 10 Barr. 198; Amos & Ferard on Fixtures, marg. p. 10; 1 Hilliard on Real Property, 64, § 75; id. 54, § 18.

*Tracy & Newman* for the appellees, relied upon the following authorities: *Winslow* v. *Ins. Co.*, 4 Met. (Mass.) 306; *Richardson* v. *Copeland*, 6 Gray, 536; *Brennan* v. *Whittaker et al.*, 15 Ohio St. 446; *Franklin et al.* v. *Molton et al.*, 5 Wis. 1; *Bringholff* v. *Munzenmaier*, 20 Iowa, 513; *Fryatt* v. *Sullivan*, 5 Hill, 116.

COLE, J. — I. This action was brought in 1865, between eight and nine years after the maturity of the note, to

**1. NOTICE:** *lis pendens.* secure which the mortgage upon the property was given. For the purpose of rebutting the presumptions arising from lapse of time, and the apparent staleness of plaintiff's claim, as well as to show the fact of a *lis pendens* in relation to the property at the time defendant's vendor acquired his right to the property, the record of the suit by Wood, Baker & Co. against these plaintiffs and others, was admissible in evidence. Rev. § 2842. It was error, therefore, to exclude it.

II. The acknowledgment to the chattel mortgage was certified prior to the act of February 24, 1858 (Rev. §

Sowden & Co. v. Craig.

2. ACKNOWL-
EDGMENT : by
attorney. 2251–54), and when there was no statute prescribing the mode of certifying acknowledgments to instruments executed by attorney. The objections made to the certificate are, that it does not state· that the principal (Burris) appeared, nor that it is his (Burris') voluntary act and deed. This is true. But it does, nevertheless, state the truth as to the person who appeared before the officer. It was the agent who ·executed the instrument, and, assuming his authority (which Burris afterward recognized, by signing the instrument himself), if it was his (the agent's) voluntary act and deed, as he acknowledged it to be, then in law it was the voluntary act and deed ·of his principal. See on this point, *Fulweiler* v. *Baugher*, 15 Serg. & R. 47, 54, 55 ; citing *Combe's Case*, 9 Coke's Rep. 76, 77 (Ireland's Abridg. of Coke's Rep. 273) ; as to ratification see *Haynes et al.* v. *Seachrist*, 13 Iowa, 455, 558.

The defendant's vendor (Druse) acquired his title to the property under a mechanic's lien claim. By our law
3. FIXTURES:
chattel mort-
gage: notice:
mechanic's
lien. then in force (Code of 1851, § 981), it was provided, that the mechanic had " a lien upon the land, including the building, with its appurtenances, for the amount due him for work or material, against all persons except incumbrancers by judgment rendered, and by instrument recorded, before the commencement of the work or the furnishing of the material." From the facts proven in the case, which are shown by the statement preceding this opinion, it appears, that the plaintiff's mortgage or bill of sale upon the property in controversy, as chattels, was duly recorded at the time the mechanic commenced his work. The notice imparted by the due and proper record of such an instrument, though called a *constructive* notice, is just as effectual for the protection of the rights of the parties as an *actual* notice by the word of mouth, or otherwise. Any

other construction of our registry laws would effectually nullify them.

The property in controversy was not, so far as the evidence shows, attached to the real estate at the time the mechanic commenced work. The record of the mortgage upon it, as chattels, was, therefore, notice to him of the rights of the plaintiffs therein. Having notice then of plaintiffs' rights, he could not, by his own act and labor, take their property, and, by making the same fixtures upon the real estate, subordinate their rights to his. Nor would the fact that the plaintiffs had sold the property for the purpose of having the same made fixtures, and had sent their own agent or employee to aid and direct in the putting up of the machinery, operate to defeat their right. This property, it will be borne in mind, is the legitimate subject for fixtures, and is that class of property about which the law permits parties to contract so as to control, as between themselves, its character, after being affixed, making it either personal property or real estate. The mortgaging of it as personal property would, as between the parties, and those having notice thereof, make it such. Of course, a different rule would obtain, in relation to bricks, lime, boards, beams, etc., used in constructing a house; these, by such use, lose their individuality, and become absorbed in, and made a part of, rather than simply annexed to, the real estate.

. The precise point we rule in this case is, that, where the owner of real estate executes a mortgage upon chattels, which may properly be made fixtures, and subsequently affixes them to the real estate, that no person having knowledge of such facts can, by purchase of the real estate or otherwise, acquire from the mortgagor any title to such chattels paramount to the mortgagee thereof.

What would be the rights of the parties in case the chattels were affixed *before* the mortgage, or where the

third party acquired his title *without notice* of it, we do not determine.

It may not be improper for us to state that we have given to this case the most deliberate consideration, and in the light of able and searching arguments. We have also examined in detail the numerous cases cited by counsel in their respective briefs, but we do not deem it necessary for us to review them herein. We ground our decision upon well settled principles, and are strengthened in our conclusion by the fact that none of the cases cited are in necessary conflict with it.

Reversed.

DILLON, Ch. J. (dissenting).—In my opinion the judgment of the District Court ought to be affirmed. The record in the Wood, Baker & Co. case, to which neither the defendant or Druse, his vendor, was a party, was as to them, *res inter alios acta*, and, therefore, inadmissible as evidence to affect them with constructive notice or for any other purpose. This seems to me to be a plain proposition. Besides, the suit was not commenced until after the plaintiffs' rights accrued and his work was finished.

Nor can I concur in the main point ruled in the foregoing opinion.

Bear in mind that after the chattel mortgage to the plaintiffs was made, the machinery was firmly annexed to the real estate—how firmly, see statement preceding the opinion. It is also material to remember that it was thus annexed to the realty by the plaintiffs' consent and with their assistance. By this annexation it became part of the real estate. The plaintiffs having consented to this annexation, the machinery thus annexed became also, as to them, part of the realty. Being part of the land, it would, of course, pass to a purchaser of the land.

Suppose after such annexation, Craig, the defendant,

had purchased the mill property, can it be maintained as law, that he would be bound, in examining the title, to examine the record of chattel mortgages? I think not. Has he less rights by virtue of his purchase of Druse, without notice, than if he had bought the property of Burris? Druse's purchase of the land at sheriff's sale, when consummated by the sheriff's deed, invested him with the title to the real estate and to every part of it, including this machinery.

The proposition upon which I stand, and which, with deference to the opinion of my brothers, I maintain to be the law of the case, is, that by the affixion, with the plaintiff's consent and co-operation, of the chattels to the realty, they became by this act *de facto* by operation of law, part and parcel of the land, and necessarily lost their chattel character, so that they could not be replevied as chattels, but would pass to a purchaser of the land of which they visibly constituted a part.

The plaintiffs having consented to the conversion of this chattel property into real property, their right to claim the property as chattels under their mortgage, ceased at the precise moment of time when by their consent it ceased to be chattels and became realty. The plaintiffs might afterward enforce a mechanic's lien, but could not replevy the property by virtue of their mortgage. *Winslow* v. *Ins. Co.*, 4 Metc. 306; *Richardson* v. *Copeland*, 6 Gray, 536; *Cross* v. *Marston*, 17 Verm. 533, 541; *Bringholff* v. *Munzenmaier*, 20 Iowa, 513.

Again, the Code of 1851, in force when Druse, the mechanic, commenced and finished his work, gave him a lien in express terms upon the land, buildings and machinery against "all persons except incumbrances by judgment rendered, and by instrument recorded before the commencement of the work." (§§ 981, 982), meaning, as I hold, not chattel mortgages, but those so recorded as

to be liens on the land and buildings, and machinery on which the lien is given.

The mechanic, as I hold, is, under this statute, not bound by constructive notice of chattel mortgages, nor by any instrument not so recorded as to be a lien upon land.

I am in favor of affirmance, but as my brothers think otherwise, the judgment below is reversed and the cause remanded for a new trial.