## Charles D. Sword

*v.*

## Wolfred N. Low.

*Filed at Ottawa November 11, 1887.*

1. Fixtures—*whether a part of the realty, and not removable, or personal, and removable.* There are three tests of the character of fixtures, as to their being irremovable, viz.: First, actual annexation to the realty, or something appurtenant thereto; second, application to the use or purpose to which that part of the realty with which they are connected is appropriated; and third, the intention of the parties making the annexation to make a permanent accession to the freehold. The latter test appears to be the principal one. In cases of doubt, the intention of the parties must control.

2. While parties may not, by contract, make personal property real or personal at will, yet when an article personal in its nature is so attached to the realty that it can be removed without material injury to it or to the realty, the intention with which it is attached will govern; and if there is an express agreement that it shall remain personal property, or if, from the attendant circumstances, it is evident or may be presumed that such was the intention of the parties, such article will be held to have retained its personal character, even as against subsequent purchasers or incumbrancers.

3. The rule that the intention with which the annexation is made will control as to the character of the fixture, does not apply to such articles as enter into and form parts of a structure appurtenant to land, such as lumber, stone and shingles, or to doors, windows and grates, and the like articles which are incorporated into the structure. These and the like articles lose their identity and become a necessary part of the structure, and are clearly distinguishable from such articles as are or may be merely annexed to the freehold and retain their characteristics, and may be removed in their entirety without material injury.

4. While it may be conceded that portable mills, engines, boilers and the like, even slightly affixed to the realty, will, in the absence of circumstances raising a contrary presumption, or evidence showing a contrary intention, be presumed to have been attached as permanent accessions to the soil, yet however permanently attached, if removable without material injury, the intention to be inferred from the circumstances, and the relation of the parties to each other and to the realty, or as shown by evidence, will be of controlling and decisive importance.

5. Where it is agreed, on the sale of a steam boiler and engine, that the vendor is to have a lien thereon, by chattel mortgage, until the price is paid,

and the purchaser gives a mortgage on the same for the price, and afterward, after setting up the same on a lot purchased by him, he renews the chattel mortgage, in which he treats the property as chattels, it will not become part of the realty if it may be removed without material injury to the freehold.

6.   The purchaser of a boiler and engine agreed to and did give the vendor a chattel mortgage thereon, on April 4, 1881, maturing July 7, 1881.   On May 14, 1881, the former bought a lot, and set the engine and boiler on the same for use.   On July 7, 1881, a new chattel mortgage on the same property, and note, were given, falling due January 7, 1882.   The purchaser being indebted to a third person, conveyed to him the lot on which the engine and boiler were set and in use, who sought to enjoin the taking of the property under the chattel mortgage.   The proof failed to show that the removal of the boiler and engine would materially damage the same, or the realty: *Held*, that the boiler and engine remained personal property, and were subject to be taken under the chattel mortgage, as against the purchaser of the realty.

7.   CHATTEL MORTGAGE—*notice of the rights of parties, and what rights.* Under the laws of this State, chattel mortgages are required to be filed and recorded in the recorder's office of the county; and they, from the date of their filing for record, are notice to all subsequent purchasers and incumbrancers, of the rights of the mortgagee thereunder in the property mortgaged, although it may be annexed or attached to real estate.

8.   NOTICE *to purchaser—as to the character of a fixture to real estate. Quære,* whether the character of a fixture or chattel annexed to real estate, as fixed by the express agreement of the parties, will be changed in favor of a subsequent purchaser or incumbrancer of the realty, in case he has no notice of such agreement.

APPEAL from the Appellate Court for the First District;— heard in that court on appeal from the Superior Court of Cook county; the Hon. H. M. SHEPARD, Judge, presiding.

In December, 1880, Thomas L. Kempster purchased of William W. Marsh, of Sycamore, Illinois, an engine and boiler, at the price of $800, $200 of which was to be paid on delivery, and for the balance he gave two notes, of $300 each, each to be secured by mortgage on real or personal property.   Wolford N. Low, appellee, was acting as agent of Marsh, in Chicago, and about January 1, 1881, Marsh shipped the engine and boiler to Chicago, consigned to Low, with instructions to de-

liver to Kempster upon his paying the $200 cash, and giving said notes, properly secured, for the balance, and not without. Shortly after, Kempster gave and secured the two notes by chattel mortgage, and delivered the same to Low, but was unable to make the cash payment. Kempster, afterwards, without having made the payment, got possession of the property without Low's consent. After getting possession, Kempster placed the engine and boiler in the warehouse, and borrowed money on the warehouse receipt. Low, finding that Kempster had got possession, finally consented to take chattel mortgage upon the engine and boiler for the whole $800, and accordingly a chattel mortgage was duly executed, and recorded April 4, 1881, and maturing, with days of grace, July 7, 1881. Kempster originally bought the engine and boiler, as he represented, for the purpose of using it in a brick-yard, on leased land, but on May 14, 1881, he contracted to purchase of Willis G. Jackson, block 14, Jackson's subdivision of part of section 11, township 40, range 13. No money was paid under this contract, but Kempster entered into possession under contract for the purchase of it, and $550 of the purchase money was agreed to be paid by a day named, and, upon payment, deed was to be delivered by said Jackson to said Kempster therefor. September 8, 1881, Kempster, being indebted to T. L. and C. D. Sword, executed a mortgage upon the premises contracted for with Jackson, to secure the same, which was recorded the same day. Said indebtedness was for machinery sold by said Sword to said Kempster some time before the execution of said mortgage. Some time after the contract of purchase made with Jackson, Kempster moved the boiler and engine upon the premises purchased, and commenced their use in furnishing the motive power in running a brick machine.

On the 7th of July, 1881, Low, as agent of Marsh, was about to take possession under a chattel mortgage, and was induced by Kempster to extend the time of payment and to take a new chattel mortgage, which was done, the new note and chattel

mortgage bearing date and record July 7, 1881, and maturing January 7, 1882. December 5, 1881, the whole of the purchase money of the land being past due, Jackson recovered judgment against Kempster in forcible detainer, but, by agreement, there was stay of writ of possession until January 7, following,—the same day the chattel mortgage to Marsh became due. Low, learning of the forcible detainer proceedings by Jackson, called upon Jackson in regard to his lien under the chattel mortgage. Jackson made no claim to the property mortgaged, recognized it as being subject to the lien of the mortgage, and requested Low to leave the engine and boiler in Kempster's possession as long as he safely could, as he was desirous that Kempster should succeed in making brick, etc., and pay his debts. Low assented to this proposition. Marsh, being dissatisfied with Low's management of the matter with Kempster, required Low to take the paper of Kempster, and Low did so.

Kempster being unable to pay Jackson, appellant, Charles D. Sword, who had become assignee of P. L. and C. D. Sword's claim against Kempster, arranged with Kempster to advance to Jackson the $550 due him, which he did, and Kempster and wife made a general warranty deed to appellant for said block 14. Before the purchase by Sword, and before he had paid anything upon the contract, he had actual notice of Low's chattel mortgage, and of the request of Jackson, under which the boiler and engine had been left upon the premises, and recognized the claim of Low by endeavoring to have him forego his lien and right to take possession of the property under his mortgage, and wait upon Kempster in common with other creditors, and failing in this, he attempted to induce other creditors of Kempster to buy in Low's mortgage and extend the time to Kempster, and thus prevent its foreclosure. Failing in this also, he, several days afterwards, took the deed from Kempster and wife, and paid the purchase money to Jackson.

It appears that the indebtedness to P. L. and C. D. Sword was for a brick machine purchased by Kempster, and that,

on the 8th of September, 1881, had long been due. Neither Sword nor Kempster having paid the note to Low, on the 9th of January, 1882, he was about to take possession of the engine and boiler under his chattel mortgage. This bill was for injunction to restrain Low from foreclosing his chattel mortgage, and alleging he was about to do so, and that said property was permanently attached to the realty, and had passed to appellant under his deed of the land, etc. The Superior Court, on hearing, dissolved the injunction and dismissed the bill, and, upon suggestion, awarded damages. The correctness of the ruling of the court in these several respects is questioned by this appeal.

Messrs. G. W. & J. T. Kretzinger, for the appellant:

The annexation of the boiler and engine, in the manner and by the means appearing in the record, made them a part of the realty, and they passed as such under the real estate mortgage executed to Sword & Son, by Kempster, September 8, 1881, as well as by the warranty deed executed by Kempster and wife to appellant, about January 1, 1882. *Dobschuetz* v. *Holliday*, 82 Ill. 371; *Thielman* v. *Carr*, 75 id. 385; *Stettauer* v. *Hamlin*, 97 id. 312; *Ford* v. *Cobb*, 20 N. Y. 351; *Snedeker* v. *Warring*, 12 id. 174; *Green* v. *Phillips*, 26 Gratt. 752; *Voorhees* v. *McGinnis*, 48 N. Y. 282; *Stockwell* v. *Campbell*, 39 Conn. 362; *Quinby* v. *M., C. and P. Co.* 24 N. J. Eq. 260; *Brennan* v. *Whittaker*, 15 Ohio St. 446; *Fortman* v. *Goepper*, 14 id. 565; *Franklin* v. *Moultland*, 5 Wis. 1; *Sands* v. *Pfeiffer*, 10 Cal. 258; *McKim* v. *Mason*, 3 Md. Ch. 186.

The chattel mortgage made to Marsh constituted no notice to the real estate mortgagee or grantee in the warranty deed, taken as security for further advances made to save his security. *Bringhoff* v. *Munzenmaier*, 20 Iowa, 519; *Hunt* v. *Bay S. I. Co.* 97 Mass. 283; *Brennan* v. *Wittaker*, 15 Ohio St. 446.

The first chattel mortgage was made before the boiler and engine were attached to the real estate. If such annexation

thereafter, by Kempster, was a fraud upon the rights of appellee or his assignor, the remedy is against Kempster. The lien of the chattel mortgage ceased the moment the personal property therein described,—to-wit, the engine and boiler,— became a part of the realty by annexation. *Ford* v. *Cobb*, 20 N. Y. 351; *Voorhees* v. *McGinnis*, 48 id. 282.

This controversy is not between Kempster, the chattel mortgagor, and the chattel mortgagee; therefore no estoppel, as against Kempster, that might arise upon recitals in the chattel mortgage, can be urged against appellant, the real estate mortgagee, and grantee. The recital in the chattel mortgage, describing the property as personal, ceases to be binding, and is ineffectual to create an estoppel when such property is annexed to the freehold and becomes a part of the realty. *Jenney* v. *Jackson*, 6 Bradw. 32; *Voorhees* v. *McGinnis*, 48 N. Y. 282, and cases cited in opinion of the court.

The damages found by the master, and confirmed by the court, upon the suggestion of damages by reason of the suing out of the injunction and its continuance for nine months, are not supported by the evidence. Upon the whole case made by the pleadings and evidence, it is clear that the equities were with the appellant, and that he was entitled to the remedy sought by his bill. The motion for a dissolution, and the final hearing of the cause, proceeded together upon the affidavits; therefore the services of counsel, rendered in one, were inseparable from the other. In fact, it was not the hearing of the motion to dissolve, but it was the trial of the cause upon final hearing, which resulted in the disolution of the injunction. *Blair* v. *Reading*, 99 Ill. 615; *Phelps* v. *Foster*, 18 id. 311.

Mr. EDWARD ROBY, for the appellee:

Jackson's judgment in forcible detainer established the fact that the contract of sale of the lot, and all rights of Kempster and those claiming through him, had been extinguished. *Moore* v. *Smith*, 24 Ill. 512.

But Kempster and Marsh had a right to take off their trade fixtures, which were chattels, including the engine and boiler. *Globe Marble Mills* v. *Quinn,* 76 N. Y. 23; *Robertson* v. *Corsett,* 39 Mich. 783; Herrman on Chattel Mortgages, 2, 6, 346, 347; *Henly* v. *Dinkerhoff,* 57 Cal. 3; *Tifft* v. *Horton,* 53 N. Y. 377; *Estate of Hinds,* 5 Whart. 138.

If a party had notice of the title of his grantor, he takes no greater or other estate, either legally or equitably, than was held by the grantor. *Taylor* v. *Baker,* 5 Price, 306; *Crafton* v. *Ormsby,* 2 S. & L. 583; *Daniels* v. *Davison,* 16 Ves. 248; 17 id. 433; *Chesterman* v. *Gardner,* 5 Johns. Ch. 29; *Allen* v. *Anthony,* 1 Meriv. 282; *Powell* v. *Dillon,* 2 Ball & Beatty, 416; *Eyre* v. *Dolphin,* id. 290; *Hall* v. *Smith,* 14 Ves. 426.

Either law or equity will hold an engine and boiler, under such circumstances as these, as chattels. *Moore* v. *Smith,* 24 Ill. 512; *Globe Marble Mills* v. *Quinn,* 76 N. Y. 23; *Robertson* v. *Corsett,* 39 Mich. 783; *Henly* v. *Dinkerhoff,* 57 Cal. 3; *Tifft* v. *Horton,* 53 N. Y. 377; *Estate of Hinds,* 5 Whart. 138; Herrman on Chattel Mortgages, 2, 6, 346, 347.

Equity will not permit Sword, by collusion with Kempster, to keep Low's boiler and engine without paying for them. *Fuller* v. *Paige,* 26 Ill. 358; *Badger* v. *Batavia Co.* 70 Ill. 302.

Any mortgage was good, between the parties, whether the mortgagee took possession or not. (*Badger* v. *Batavia Co.* 70 Ill. 302.) And this case shows that a chattel mortgage of a fixture is as good as any other.

Under the circumstances of this case, the engine must be regarded as personal property, if necessary to protect the paramount rights of the mortgagee. *Ford* v. *Cobb,* 20 N. Y. 351; *Smith* v. *Benson,* 1 Hill, 176; *Mott* v. *Palmer,* 1 Comst. 564; *Goddard* v. *Gould,* 14 Barb. 662.

Mr. JUSTICE SHOPE delivered the opinion of the Court:

The principal question presented in this record is, whether the boiler and engine in controversy, under the circumstances

of the case, passed by the deed of Kempster and wife to Sword, or were subject to the lien of the chattel mortgage in favor of Marsh. At the time of the execution of the chattel mortgage of April 4, 1881, this property was in nowise connected with the realty, but about May 14, when Kempster purchased lot 14 of Jackson, it was placed thereon. There is a sharp conflict in the evidence as to the character of the attachment of this machinery at the time of making the chattel mortgage of July 7, 1881. The evidence introduced by appellee shows that the boiler and engine, at that time, were resting upon temporary supports, simply, and covered by a shed open at both ends, out of which they could have been removed without injury to the machinery or to the freehold, while that offered by the appellant shows that they were attached to the soil by being placed upon solid brick foundations, and were inclosed by a building, so that their removal would occasion more or less damage to the articles themselves, and to the freehold. If it should become material, we are inclined to hold that the weight of evidence, when considered in the light of all the surrounding circumstances, sustains the contention of appellee as to the mode of attachment July 7, 1881, while there can be no doubt that afterwards, and before the appellant acquired his deed from Kempster and wife, in January, 1882, they were attached by being placed on brick foundations, as contended for by appellant.

We are referred to very respectable authority, holding that although the articles were personalty at the time of making the chattel mortgage, if they afterwards became attached to the realty as fixtures, they would thereafter pass with the land under a deed or mortgage thereof, and that the chattel mortgagee must seek his remedy against those who wrongfully converted the mortgaged articles, and thereby deprived him of his security. We do not question the correctness of the rule announced in cases where it properly arises, but we think that the principle contended for can have no application here. In

determining the questions involved, it will be necessary to consider the character of the property mortgaged, its relation to the real estate, and the relation of the respective parties to each other and to the property.

It is definitely shown, that upon the purchase of the boiler and engine from Marsh, Kempster was to pay $200 in cash, and secure the residue by mortgage on real estate, and by chattel mortgage upon the property purchased. Kempster, being unable to pay, executed his notes for $800,—the whole amount of the purchase price,—and a chattel mortgage to secure the same, on the boiler and engine, but was unable to give other security of any value, as he had agreed to do. On the 4th of April, 1881, this first note became due, and the time of payment was extended, new notes being taken, falling due July 4, 1881, which were secured by a chattel mortgage on this property, duly made and recorded. On the 7th day of July, 1881, the notes of April 4, 1881, having become due by their terms, Low, as agent of Marsh, took possession of the boiler and engine under the chattel mortgage of April 4, and there was then, at the request of Kempster, a farther extension of time of payment agreed upon until January 7, 1882, and a new chattel mortgage, upon the engine and boiler, made, acknowledged and recorded the same day, to secure the note given for the original purchase money of the engine and boiler. The agreement and understanding at all times, after it was found Kempster could not pay, between Kempster and those who acted for Marsh, was, that the purchase price of the engine and boiler should be secured by a chattel mortgage thereon. It is shown, at the time of the purchase Kempster represented that he expected to use this engine and boiler as motive power, etc., upon land which he had leased, but afterwards, when he entered into contract of purchase for block 14, in Jackson's subdivision, etc., of Jackson, and went into possession, he placed the property in controversy thereon, and put it in use to furnish motive power in running a brick machine. At the

time of making the chattel mortgage of July 7, the boiler and engine were subject to the lien of the chattel mortgage of April 4, unless, as between Kempster and Marsh, the placing of it on the real estate, as described, had changed its character from that of personal property. The mortgage of April 4 was in the usual form, and contained the usual covenants. Kempster mortgaged the goods and chattels therein mentioned, etc., and Marsh or his assigns, upon failure to pay the notes thereby secured, was given the right to seize the same wherever found, and sell, to satisfy the indebtedness thereby secured.

To determine the irremovable character of a fixture, three tests are, by the modern authorities, applied, viz: "First, actual annexation to the realty, or something appurtenant thereto; second, application to the use or purpose to which that part of the realty with which it is connected is appropriated; and third, the intention of the parties making the annexation to make a permanent accession to the freehold." Herrman on Chattel Mortgages, 6; Ewell on Fixtures, 21, 22; Tyler on Fixtures, 114; Washburn on Real Prop. 16.

Mr. Ewell (page 22,) says, that "of these three tests the clear tendency of modern authority seems to give prominence to the question of intention to make the article a permanent accession to the freehold, and the others seem to derive their chief value as evidence of such intention."

Washburn (page 8,) lays down the rule: "It may be stated, in the first place, that whether a thing which may be a fixture becomes a part of the realty by annexing it, depends, as a general proposition, upon the intention with which it was done."

In *Kelly* v. *Austin*, 46 Ill. 156, this court said, while the intention alone will not always determine whether such structures as were there being considered, are or are not to be regarded as realty, it will have a controlling influence in cases of doubt. See, also, *Dooley* v. *Crist*, 25 Ill. 551; *Smith* v. *Moore*, 26 id. 392; *Arnold* v. *Crowder*, 81 id. 56; *Thielman* v. *Carr et al.* 75 id. 385.

There seems to be great unanimity in the authorities, that things personal in their nature may retain their character of personalty by the express agreement of the parties, although attached to the realty in such manner as that, without such agreement, they would lose that character, provided they are so attached that they may be removed without material injury to the article itself, or to the freehold. It is not held that parties may, by contract, make personal property real or personal at will, but that where an article personal in its nature is so attached to the realty that it can be removed without material injury to it or to the realty, the intention with which it is attached will govern; and if there is an express agreement that it shall remain personal property, or if, from the circumstances attending, it is evident or may be presumed that such was the intention of the parties, it will be held to have retained its personal character. *Ford* v. *Cobb,* 20 N. Y. 344; *Eaves* v. *Estes,* 10 Kan. 314; *Coleman* v. *Lewis,* 27 Pa. 391; *Hunt* v. *Bay State Iron Co.* 97 Mass. 279; *Richardson* v. *Copeland,* 6 Gray, 536; *Haven* v. *Emory,* 33 N. H. 66.

So in *Smith* v. *Benson,* 1 Hill, 176, Cowen, J., says: "*Prima facie,* such buildings would be a fixture, and would not be removable; * * * but the parties concerned may control the legal effect of any transaction between them, by an express agreement." See, also, *Shuart* v. *Taylor,* 7 How. Pr. 251; *Parker* v. *Redfield,* 10 Conn. 490; *Curtis* v. *Hoyt,* 19 id. 154; *Tibbetts* v. *Moore,* 23 Cal. 208.

In *Piper* v. *Martin,* 8 Pa. 206, it was held, where the sheriff had levied on two stills erected in the usual way in the distillery of the defendant, that the agreement of the defendant in the execution, that they should be treated as personalty, was conclusive, and the court say: "Now whether, in contemplation of law, it was attached to the realty, or not, as a fixture, is immaterial, as the parties agreed to consider it personal property. This dispenses with the necessity of determining whether it was real or personal."

32—122 Ill.

In the case of *Ford* v. *Cobb, supra,* salt kettles were bought by the owner of the fee, and mortgaged to the seller as personalty to secure the purchase money, and were afterwards affixed to the freehold by being set in brick foundations, from which they could be removed only at an expense of fifty dollars. It was held that such salt pans retained their character as personal chattels, as against the subsequent purchaser of the realty, who had no notice of the chattel mortgage other than that constructively given by the filing of the chattel mortgage for record.

*Eaves* v. *Estes, supra,* arose between the vendee of the freehold and a chattel mortgagee, the purchaser of the freehold having no notice of the chattel mortgagee's lien. The property mortgaged was an engine put into and used as motive power in a mill. The court say: "But when we consider the purpose of the parties, as evinced by the mortgage, to make the engine retain the character of a chattel, regardless of its attachment to the mill, and as the mortgage violated no principle of law, wrought no injury to the rights of others, and was in the interest of trade, we have no doubt that the engine continued to be personal property." See, also, *Voorhees* v. *McGinnis,* 46 Barb. 242.

In *Tift* v. *Horton,* 53 N. Y. 377, the New York Court of Appeals held that neither a prior nor subsequent mortgagee of land can claim, as subject to the lien of his mortgage, chattels brought upon and affixed to the lands under an agreement between the owner of the fee and the owner of the chattels, that the character of the latter as a personal chattel is not to be changed. FOLGER, J., in delivering the opinion of the court, said: "While there can be no doubt that the intention of the owner of the land was that the engine and boilers should ultimately become part of the realty, and be permanently affixed to it, this was subordinate to the prior intention expressed by the agreement. That fully shows her intention, and the intention of the plaintiff, that the act of annexing them to the

freehold should not change or take away the character of them as chattels until the price of them had been fully paid. And as parties may, by their agreement expressing their intention so to do, preserve and continue the chattels as personal property, there can be no doubt but that, as between themselves, the agreement in this case was fully sufficient to that end." See, also, *Sheldon* v. *Edwards*, 35 N. Y. 279; *Shell* v. *Haywood*, 16 Pa. 523.

In *Godard* v. *Gould*, 14 Barb. 662, it appeared that machinery was to be manufactured and set up in the mill of the owner of the freehold. By special agreement the machinery was to remain the property of the manufacturer until it was paid for. It was so put into the mill that it could be removed without material injury, although the attachment was such that without such agreement it would become a part of the realty. It was held that by the annexation it did not become a part of the realty, so as to pass by a deed of the mill and lot, but that it continued to be the personal property of the party who manufactured it, so long as the purchase money remained unpaid. The court say, upon the facts, "that the machinery did not, by the annexation, become part of the realty, but continued to be personal property, and belonged to the plaintiffs. * * * The deed of Stoddard and wife (the owners of the freehold) to the defendants did not affect the right of the plaintiff to the machinery. The machinery being personal property, the grantors could not convey a greater interest in it than they had. * * * Nor does the fact that the defendants are *bona fide* grantees in the conveyance make any difference. The plaintiffs in no way consented to the conveyance; they have not practiced any fraud on the defendants; their equities are at least equal to those of the defendants."

The rule as to trade fixtures between landlord and tenant, arising from the presumption that their annexation was accessory to the trade or calling of the tenant, and not to the land, is another illustration of the rule that the intention with which

the annexation is made will control as to whether the article attached has become a permanent fixture or not. This rule, manifestly, would not apply to such articles as enter into and form parts of a structure appurtenant to land, such as lumber, stone and shingles, or to doors, windows and grates, and the like articles which are incorporated into the structure, for their removal would, *pro tanto* at least, be a destruction of the appurtenance. All these, and like articles thus used, lose their identity and become a necessary part of the building, fence, or other structure, and are clearly distinguishable from such articles as are or may be merely annexed to the freehold, or some appurtenant thereof, and which, retaining their individual characteristics, may be removed in their entirety, and without material injury. Such articles, although placed upon or even attached to the land, may or may not be fixtures, depending upon the mode of attachment and the intention of the parties. Such articles, as in the case of portable mills, engines, boilers, and the like, must, in the nature of things, be more or less firmly affixed to the soil, or some appurtenant thereto, before they can be put to the use for which they are designed. It may be conceded that such articles, even slightly affixed to the realty, will, in the absence of circumstances raising a contrary presumption, or evidence showing a contrary intention, be presumed to have been attached as permanent accessions to the soil; yet it is apparent, from the authorities, that however permanently attached, if removable without material injury, the intention, to be inferred from the circumstances, and the relation of the parties to each other and to the realty, or as shown by evidence, will be of controlling and decisive importance.

Testing this case by this rule, it is evident that the engine and boiler, on the 7th of July, when the last chattel mortgage was given, as between Kempster and his vendor, Marsh, was personal property, and liable to be taken under the chattel mortgage of April 4, and sold to satisfy the indebtedness thereby

secured. By the execution and delivery of the last chattel mortgage, Kempster was carrying out his original agreement to secure the purchase money by a chattel mortgage on the thing purchased by him of Marsh, until it was paid. But, independent of this, by his chattel mortgage of July 7, Kempster sold, conveyed and confirmed the property as goods and chattels. He therein described the property as "all and singular of the following described goods and chattels, to-wit., one engine and boiler, (described in detail,) located and used by said Kempster upon his brick-yard, in the township of Jefferson, Cook county, Illinois, and more particularly described as block 14, in Jackson's subdivision of the south-east quarter of section 11, and south-west quarter of section 12, township 40, range 12," etc., and covenanted that in case of default in the payment of the notes therein mentioned and secured, Marsh, his heirs or assigns, might take possession of the mortgaged property, and every part thereof, remove and sell the same to satisfy such indebtedness. It is also shown that the extension of time of payment was made at Kempster's request, and he being wholly insolvent, was made upon the express condition and agreement that he would secure the debt by chattel mortgage on this property. He would be estopped from asserting contrary to the expressed covenants of his deed, and any change Kempster may have made in the attachment of this machinery to the soil, if any, was, as to him, made in strict subordination to the lien of this chattel mortgage.

In respect to the character of evidence required to show that the chattel shall retain its character of personal property after its annexation to the freehold, the adjudged cases are at variance. In some of them, of high authority, it is held that the execution and record of a chattel mortgage will, of itself, without any special agreement that the chattel shall retain its personal character, be sufficient to prevent the article from attaching as a permanent fixture. (*Ford* v. *Cobb, supra; Eaves* v. *Estes, supra.*) In this case, as we have seen, it was ex-

pressly agreed that Marsh was to have a lien on the property, by chattel mortgage, to secure the purchase price until paid, which brings the case within the rule as announced by the great weight of authority. We think that where the mortgagor and mortgagee agree that the property shall be treated as personalty, and the mortgagor covenants that it shall be subject to seizure and sale as a chattel upon the maturity and non-payment of the debt, and where the character of the article and mode of attachment are such that it may be removed without material injury to the freehold, the article retains its character as a chattel and does not become a part of the realty. The character of attachment, here, conceding to the fullest extent that shown by the appellant's testimony, was such as might have been made with an intention to make the articles permanent accessions to the land, or such, only, as a prudent man might, and probably would, make, to preserve and keep the machinery in place for a less time, even, than Kempster had the right of enjoyment under the terms of the chattel mortgage. Upon the most careful consideration of the evidence it will not be found that the removal of the engine and boiler would materially damage them or the realty.

Under the laws of this State, unlike that of many of the other States, chattel mortgages are required to be filed and recorded in the office of the recorder of deeds of the county, and from the date of their filing for record are notice to all subsequent purchasers and incumbrancers, of the rights of the mortgagee thereunder in the property mortgaged. (*Craig* v. *Dimock*, 47 Ill. 319.) In *Snowden* v. *Craig*, 26 Iowa, 162, chattels subject to a recorded chattel mortgage were placed upon real estate, upon which mechanics acquired a lien under the Mechanics' Lien law, without notice of the chattel mortgage lien, except the constructive notice by the record. And it was held "the notice imparted by the due and proper record of such an instrument, though called a constructive notice, is just as effectual for the protection of the rights of the parties

as an actual notice by the word of mouth, or otherwise. Any other construction of our registry laws would effectually nullify them."

On the 8th day of September, 1881, when the right of P. L. and C. D. Sword, under whom appellant claims, accrued by virtue of the mortgage upon the land upon which these mortgaged chattels were situated, it is apparent the boiler and engine in controversy had not become a part of the realty, but, by virtue of the agreement and chattel mortgage mentioned, had retained their character as chattels. It is shown, also, that appellant was familiar with the premises in question before taking said real estate mortgage, and knew that they were in use upon the land, as described in the chattel mortgage. The courts are not harmonious in their holdings in respect to whether the rule that the parties may retain the personal character of chattels annexed to the realty by express agreement, would obtain as against a subsequent grantee or incumbrancer of the freehold to which the chattels are affixed, without notice of such agreement of the parties. Without further examination of the authorities, it will be seen from what has already been said, that many cases, and as said by Mr. Tyler, (in his work on Fixtures, page 673,) the majority of the cases, perhaps, do not regard the want of such notice as controlling in cases of this sort. The later authorities have relaxed the rule of law, and have done so in consideration of the public convenience, and in the interest of trade and commerce. And while it may be objected that under this ruling the examination of title to realty will necessarily involve the examination of the chattel mortgage record, to determine whether articles apparently attached to the soil as permanent fixtures are subject to liens as personalty, we can see no hardship in holding that as to articles which necessarily retain their individual characteristics after being annexed to the soil, and which may or may not be fixtures, and which it is apparent may be removed without material injury to the freehold, the purchaser

or incumbrancer of the realty will be required to take notice of what is apparent upon the public record. It will not be questioned that he would be required to take notice of judgment liens, although not apparent upon the land record. So, also, of tax liens, although the same are not apparent upon the land record nor kept in the office of the recorder of deeds. Here, the character of the property was such, that before it could be put to use it must necessarily be placed upon and so attached to the land as that it might, and would, if so intended, become a fixture. The parties had done everything in their power, by a compliance with the statutes of the State, to preserve this lien. If the lien may not thus be preserved, no one could buy, on time, property which may become a fixture, and secure the purchase money by a chattel mortgage thereon, for so soon as it is put into use the lien of the mortgage would be extinguished.

We are of opinion in this case, that the chattel character of the property was preserved, and that by virtue of the real estate mortgage of September 8, 1881, no lien was created upon the engine and boiler in question, as against the chattel mortgage thereon. Further characterizing this property, it is shown that as between Jackson, the owner of the fee, and Kempster and Marsh, the boiler and engine in question were treated and regarded as personal property. It appears that on December 5, 1881, the purchase money, under the contract for the sale of the land by Kempster from Jackson, being due and unpaid, Jackson brought forcible detainer against Kempster to recover possession of the land, and on the 17th of that month recovered judgment therein. Low, agent of Marsh, learning of the institution of the suit, was about to foreclose the chattel mortgage. Jackson at once disclaimed any right to or interest in the boiler and engine, recognized the lien of the chattel mortgage, and requested Low to permit the boiler and engine to remain upon the premises, in possession of Kempster, as long as he could without prejudice to his chattel mortgage lien, to which Low

assented, upon the express agreement of Jackson that there should be no opposition to his entering, at any time, and foreclosing the chattel mortgage. This arrangement was made at Kempster's request, and by an arrangement between him and Jackson the writ of possession in forcible detainer was stayed until the 7th day of January, 1882, the day of the maturity of the chattel mortgage. It appears, affirmatively, and by a clear preponderance of evidence, that several days before appellant paid Jackson the consideration for the land, and caused the deed to be made from Jackson to Kempster, and from Kempster and wife to himself, he was fully apprised of all the facts and circumstances connected with the sale of the chattels to Kempster, the taking of the various chattel mortgages thereon, and of the agreement and understanding between Kempster and Marsh in respect to the chattel mortgage lien on said property to secure the purchase money. At the time, therefore, of the making of the real estate mortgage in September, 1881, and at the time of Jackson's conveyance to Kempster, and by Kempster and wife to Sword, the grantees in said mortgage and deed were chargeable with notice of the chattel mortgage of Marsh, and the purpose and intention of the parties in respect of this property, as disclosed thereby. Appellant, under neither of his claims, has superior equity, or stands in any better or different position, in respect to the chattels in controversy, than his grantors stood, and is entitled to no different relief, in equity, than Kempster would have been had he filed this bill after acquiring the title from Jackson. The decree of the Superior Court dissolving the injunction, dismissing the bill, and for costs, was properly rendered.

It is also urged that the court erred in awarding damages upon suggestions filed at the dissolution of the injunction. It is not, as we understand counsel, contended that the items in respect of which the damages were assessed are not proper elements of damage, but that the amount found and allowed is excessive. We have carefully considered the evidence contained

in the master's report, and find that the amount, both as to the item for solicitor's fees and for damage to the property, is sustained by the proof, and we are unable, in the face of the evidence, to say they are excessive.

Finding no error in this record, the judgment of the Appellate Court will be affirmed.

*Judgment affirmed.*

SHELDON, Ch. J., and CRAIG, J., dissenting.