Andrews & Co. v. Chandler.

# A. H. Andrews & Co.
## v.
# P. R. & F. R. Chandler.

*Fixtures—Opera Chairs—Intention—Rights of Mortgagees—Preliminary Injunction—Dissolution of.*

1.   Whether articles which are attached to a building and can be removed without injury become part of the realty or remain movable fixtures, depends upon the intention of the party affixing them.

2.   Upon a bill filed by the mortgagee in a mortgage on an opera house to enjoin the foreclosure of a chattel mortgage on the opera chairs contained in such opera house, it is *held:* That it was the intention of the mortgagor that the chairs should remain personal property; that the rights of the complainant are not affected by the giving of a new chattel mortgage upon the expiration of the first; that under the state of facts disclosed by the record the preliminary injunction should be dissolved.

[Opinion filed August 1, 1888.]

APPEAL from the Circuit Court of Cook County; the Hon. LORIN C. COLLINS, Judge, presiding.

Appellees filed their bill of complaint on which a preliminary injunction was granted. The bill alleged: That on April 20, 1885, John B. Lanyon, being the owner of lots eleven and twelve, etc., in Town of Lake, Cook County, Illinois, and being desirous of improving the same with a building to be used as an opera house, applied to orators for a loan of $9,000, to be used in making such improvements; that in compliance with such application orators advanced $9,000; that Lanyon delivered to orators three notes for $3,000 each, due in one, two and three years after date, and to secure payment of the same made and delivered to orator, F. R. Chandler, as trustee, a trust deed of said lots; that during the year 1885, Lanyon erected on said lots an opera house building; that the upper portion thereof was improved as and for an opera house to be permanently used for giving public theatrical entertainments; that in order to meet the demands of the modern public, Lanyon placed upon the floor of said room 796 opera chairs of a mechanical construction peculiarly adapted for use in an opera house; that said chairs were of a character intended to be permanently attached to the floor of said opera house as a permanent fixture; that said chairs were so placed upon the floor of said opera house during its construction and were securely attached and fastened to said floor and building by screws firmly imbedded in said floor, by means whereof said chairs, and each thereof, became a permanent incident and improvement of said opera house building; that it was the intention of Lanyon in so attaching said chairs to said floor in the manner above specified, thereby to make them permanent fixtures and improvements in said building; that in view of the distinctive character of said building such chairs constitute an indispensable part of said opera house, and without the same, said house would be valueless for the purposes contemplated in its construction; that said $9,000 is now wholly due, but it is

Andrews & Co. v. Chandler.

wholly unpaid; that said trust deed remains in full force; that on February 19, 1887, Lanyon delivered to A. H. Andrews & Company six notes, $200 each, due in two, four, six, eight, ten and twelve months after date, and to secure the same executed to said Andrews & Company a chattel mortgage upon said 796 opera chairs; that the last of said notes will fall due February 19, 1888, and that Lanyon is in default on five of said notes; that it is the intention of said defendant to foreclose said mortgage upon the maturity of said last note, and to detach and remove said chairs, the same being permanently attached to said building; that if such intention are carried out it will result in irreparable injury to orators and wholly destroy the utility of said opera house, and greatly impair and lessen their security. Orators attach copy of trust deed, "Exhibit A," and copy of notes, "Exhibit B."

To the end that defendants, A. H. Andrews & Company, J. B. Lanyon, T. O. Dargan and Jos. Allen, all of whom claim some interest in said building, may answer, without oath, and that A. H. Andrews & Company may be enjoined from carrying out its intentions and from detaching and removing or in any wise interfering with said building and chairs in violation of orators' rights.

Bill sworn to.

The answer of A. H. Andrews & Company, filed February 17, 1888, admits delivery of real estate mortgage by Lanyon to F. R. Chandler, April 20, 1885, to secure $9,000. Admits erection of an opera house, so called, on same land during 1885. That opera house was furnished by Lanyon with 796 chairs. Denies that said chairs were peculiarly adapted for use in an opera house, but equally adapted for use in a church. Denies that chairs were intended to be permanently attached to the floor of said opera house as a permanent fixture. Admits that chairs were fastened to the floor with screws. Denies that chairs by such fastening became a permanent improvement of building. Expressly denies that it was the intention of Lanyon in so attaching chairs to floor to make them permanent fixtures. Denies that chairs constitute an indispensable part of said opera house, or the same would

be valueless without them for purposes contemplated. Admits that on February 19, 1887, Lanyon delivered to respondent six notes, $200 each, and secured the same by chattel mortgage on said 796 chairs, duly acknowledged and recorded—copy of unpaid notes, "Exhibit A" and mortgage, "Exhibit B"—and that last note will mature February 21, 1888; only one has been paid, and it was the intention of respondent to foreclose said mortgage upon maturity of said notes, and remove said chairs from said building under powers in said mortgage in case the same were not paid. Denies that such removal would result in any injury to complainants. Avers that building and grounds are worth about $40,000; that Lanyon is indebted to respondent on said notes and chattel mortgage about $1,124; that said notes were given by Lanyon to respondent in renewal of certain other unpaid notes which were secured by chattel mortgage of like import upon said chairs, duly acknowledged and recorded and then about to mature; that said original notes were given by Lanyon to respondent in payment of purchase price of said 796 chairs; that said original notes and chattel mortgage, and said notes and mortgage of February 19, 1887, were given by Lanyon to respondent in pursuance of the original contract of purchase of said chairs by Lanyon from respondent, which contract was in writing, signed by Lanyon; a copy is "Exhibit C;" that said chairs were not constructed especially for said house, but are of patterns kept in stock by respondent in its business of manufacturer of furniture and bank, church and school fixtures and furnishings; that chairs were in all respects complete and ready for use before the same were placed in said house; that only attachment of chairs to building is by means of screws through the feet of said chairs sunk into the floor; that removal of chairs would in no wise injure building nor chairs, and can be accomplished by simply removing the screws from the feet of chairs; that it was distinctly understood and agreed between Lanyon and respondent at time of purchase of chairs that the same should not become a part of the building, but should remain personal property, at least until the purchase price was fully paid; avers that Lanyon has paid on account

Andrews & Co. v. Chandler.

of purchase price of said chairs $1,000, and that Lanyon, Dorgan and Allen have at no time questioned the right of respondent to exercise the powers conferred by said chattel mortgage; and Allen, the present owner of the building, has repeatedly promised to pay said five unpaid notes.

Jurat by A. H. Andrews, president.

" Exhibit A." Five notes, $200 each, dated February 19, 1887, Lanyon to A. H. Andrews & Company, due four, six, eight, ten and twelve months.

" Exhibit B." " Chattel mortgage, dated February 19, 1887, Lanyon to A. H. Andrews & Company, on 796 chairs, to secure said six notes, $200 each. Lanyon covenants that he is lawfully possessed of said goods and chattels; that the same are free from incumbrances; that he will keep the same insured and make loss payable to holder of notes; that in case of default second party may enter the premises and take possession and remove and sell. Acknowledged and recorded February 21, 1887.

" Exhibit C." " Contract, dated July 6, 1885, between A. H. Andrews & Company and J. B. Lanyon, witnesseth: That first party have sold to second party the bill of opera chairs on back thereof for price named therein, to be delivered, set up complete in opera house at Englewood. Second party to make accurate measurements of the space on which the chairs are to be placed; if on a curve, exact length of curve; if straight, exact length of line; and to furnish plan of seating; all information within ten days. Second party to pay $2.75 each for No. 3 chairs and $2.25 No. 35 chairs, as follows: In cash, $200, after first performance, balance by notes due in six, nine and twelve months, secured by mortgage on the chairs, with interest at seven per cent. Chairs to be insured by J. B. Lanyon, loss, if any, to be paid to A. H. Andrews & Company. Settlement to be made within thirty days from the receipt of goods.

(Signed) " J. B. Lanyon,
" A. H. Andrews & Co."

A motion to dissolve the injunction was made by appellants, and on the hearing of said motion, the answer was read

and also the affidavit of one Weber, stating that he was the secretary of appellant, and drew up the contract for sale to Lanyon of the opera chairs; that the question of securing the purchase price of said chairs was talked over between Lanyon and affiant; that Lanyon agreed to give a chattel mortgage in the usual form to secure the balance of the price; that the chairs were sold and delivered to Lanyon upon the faith of said contract.

Appellees in opposition to the motion read the bill and an affidavit by Chandler that Chandler & Company had no notice of the notes and chattel mortgage until within two weeks since; that in making said loan affiant contemplated that he was making a loan upon an opera house to be completed with all the appointments and improvements of a modern opera house; that he would not have loaned said money had he known or anticipated that one of the chief and most valuable and necessary features of an opera house, to wit, opera chairs, was to be withheld from him as security for his loan.

The court overruled the motion to dissolve the injunction, and from said order the appeal is prosecuted to this court.

Mr. Lyman M. Paine, for appellant.

The case of Sword v. Low, 13 N. E. Rep. 826, shows clearly that Illinois is one of the States in which the rule has become established that chattels annexed to realty under an agreement that they shall continue to remain personalty will retain their chattel character against a mortgagee of the real estate.

In that case the court says: "To determine the irremovable character of a fixture, three tests are by the modern authorities applied, viz.: 1. Actual annexation to the realty or something appurtenant thereto; 2. Application to the use or purpose to which that part of the realty with which it is connected is appropriated, and, 3. The intention of the parties making the annexation to make a permanent accession to the freehold." See, also, Kelly v. Austin, 46 Ill. 156.

In the case of Crippen v. Morrison, 13 Mich. 23, where a real estate mortgage was given with a verbal agreement that the mortgagor would erect a saw-mill on the premises, he

did erect the saw-mill, but he gave a chattel mortgage on the engine and machinery six months after the real estate mortgage, having bought the engine upon express agreement to secure the purchase price by chattel mortgage.   The seller of the engine was held to have the better right in a contest with the real estate mortgagee, and the court said:   "The property which was the subject of this litigation was only erected upon the premises upon the agreement that it should be subject to a chattel mortgage for its purchase price.   By this the parties kept it separate from the realty and it never became part of it."

The complainants in this case must rest their case simply and alone upon the presumption that improvements made by the mortgagor on the mortgaged premises were made for the benefit of the inheritance.   This presumption is not absolute, but may be rebutted by agreement between the mortgagor and the owner of chattels annexed.   Ewell on Fixtures, 283. But conceding for the moment all that appellees claim respecting the permanent accession of these chairs to the freehold, still appellees can not complain of their removal "unless such severance would impair the mortgagee's security and render it of doubtful adequacy."   Till they can show that without the chairs their security is of doubtful adequacy, they have "no remedy for such severance either by recaption of the articles severed, action at law for such severance, or for the articles severed, or by injunction to restrain the mortgagor from making the same."   Ewell on Fixtures, 49.

Mr. HOWARD HARE, for appellees.

MORAN, P. J.   The question presented for decision is whether, under the circumstances of this case, the opera chairs are to be considered fixtures, as between the real estate mortgagee and the holder of the chattel mortgage, who sold and delivered the chairs upon a contract that the deferred payments for them should be secured by a chattel mortgage upon them.   Whether articles which are attached to a building become a part of the realty or remain movable fixtures, will depend, according to the weight of authority, upon the intention of the party affixing them, particularly where the articles

attached can be removed without injury to the articles themselves or to the freehold.

Here the intention of Lanyon, that the opera chairs should remain personal property, is very clearly evidenced by his agreement in the contract of purchase that he would give a chattel mortgage upon them to secure part of the purchase money, and that he would insure them, " loss, if any, payable to A. H. Andrews & Co."

We can not see that the rights of appellant are at all affected by the fact that the first chattel mortgage expired and that a new one was executed to secure the balance of the purchase money yet remaining unpaid. While the lien secured by the first chattel mortgage expired, the intention with which the chairs were put in the building continued and the new chattel mortgage created a new lien upon them, whereas the lien of the real estate mortgage did not extend to them, they continuing to be chattels. It is not deemed necessary to examine and discuss the various authorities with reference to the law of fixtures as applicable to the facts of this case. We regard, the case as controlled by Sword v. Low, recently decided by the Supreme Court, 11 Western Rep. 719, in which the cases on the subject are fully cited and considered. And see, also, Campbell v. Roddy, 12 Central Rep. 821.

It is not alleged in the bill that Lanyon is insolvent, or that the removal of the chairs would so reduce the value of the property as to make the security inadequate. The answer alleges that the property covered by the mortgage is of the value of $40,000, and the loan secured is $9,000. Under that state of facts it seems to be established that the mortgagee is not entitled to an injunction to restrain the removal of fixtures which are subject to the lien of the mortgage. Ewell on Fixtures, 49, and cases cited.

This condition of the record was proper to be considered on the motion to dissolve, and would, in our opinion, warrant the granting of the order of dissolution.

The order overruling the motion to dissolve the injunction will be reversed, and the case will be remanded to the Circuit Court, with directions to enter an order dissolving the preliminary injunction now existing in said cause.

*Reversed and remanded.*