William A. Thuma, Complainant, v. Granada Hotel
Corporation et al., Defendants.
International and Industrial Securities Corporation,
Appellee, v. Central Republic Bank and Trust
Company, Appellant.

Gen. No. 35,872.

Opinion filed February 21, 1933.   Rehearing denied March 14, 1933.

DEFREES, BUCKINGHAM, JONES & HOFFMAN, for appellant; VINCENT O'BRIEN and JOHN MERRILL BAKER, of counsel.

RINGER, WILHARTZ & HIRSCH, for appellee; ARTHUR WOLF, of counsel.

MR. PRESIDING JUSTICE SCANLAN delivered the opinion of the court.

Thuma filed a bill for partial foreclosure of a second mortgage and the appointment of a receiver, and respondent, Central Republic Bank and Trust Company, as trustee under a first mortgage, was joined as a defendant. A receiver was appointed and later Albert Pick & Company (hereinafter called Pick), claiming as purchaser at a chattel mortgage sale made under a decree in another case, filed its intervening petition, asserting title and right to possession of the property so purchased and which was then in the possession of the receiver. All of the property was surrendered, without objection, to petitioner save certain items that the receiver and trustee, in their answers to the petition, claimed were fixtures and part of the realty. As to such items the chancellor, after a lengthy hearing, entered a decree in favor of petitioner, from which Central Republic Bank and Trust Company, as trustee, appeals.

In January, 1924, Granada Hotel Corporation (hereinafter called Granada), in order to provide funds for the erection of an apartment hotel building at 523–529 Arlington Place, Chicago, applied to Chicago Trust Company (now Central Republic Bank and Trust Company) for a construction loan, and to secure the

loan executed a first mortgage, dated February 9, 1924, recorded February 15, 1924, which conveyed the real estate and premises in question to Chicago Trust Company and its successors, as trustee, to secure an indebtedness of $550,000, evidenced by 1,262 bonds, and interest thereon at 6½ per cent per annum, payable semiannually. The trust deed also conveyed "all tenements, hereditaments and appurtenances thereunto belonging, including all window screens, door screens, curtain fixtures, furnaces, ranges, elevators, ice boxes, gas and electric fixtures, cleaning, power, heating, incinerating and refrigerating apparatus, facilities and transmission, In-a-Dor beds, chifforobes, dish washing machinery, kitchen cabinets, and pipe organ, and any and all other fixtures that might be then in any building or that might be placed in any building then or thereafter standing on said premises." The proceeds of the bonds were disbursed to Granada or on its order. About August, 1924, Pick sold and delivered to Granada certain furnishings, furniture and equipment for the premises (known as Granada hotel) for $107,096.84, a part of which was paid in cash, and Granada executed and delivered to Pick its part purchase money chattel mortgage notes, dated August 20, 1924, aggregating the sum of $83,096.84, and a chattel mortgage, of the same date, covering all of the said furnishings, etc. In January, 1925, Granada executed to Chicago Trust Company, as additional security to the trust deed executed in 1924, a chattel mortgage conveying, among other items, the same property included in the chattel mortgage to Pick, subject to "such purchase-money chattel mortgages, if any, as may have been heretofore duly executed and entered of record." Granada defaulted in the payment of certain of the notes given to Pick, and on May 19, 1928, the entire balance then unpaid amounted to $54,173.45, and Pick filed, in the circuit court of Cook county, a

bill to foreclose the chattel mortgage and made Granada a party defendant, and on November 13, 1928, a decree was entered ordering the property conveyed by the mortgage to be sold to satisfy the amount found to be due to Pick, but before the date of sale certain litigation was commenced and Pick and the master in the chattel mortgage foreclosure suit were restrained from proceeding with the sale. The restraining suit was carried to the Supreme Court of the United States, where it was decided in Pick's favor, on June 3, 1930, and on June 11, 1930, the master sold all of the property covered in the chattel mortgage, including the items here in dispute, to Pick, and delivered to it a bill of sale. On the day before the sale Thuma filed his bill in the instant case, and the receiver was appointed on June 11. The receiver refused to comply with a demand for the return of the property and thereupon Pick filed the instant intervening petition, and on June 24, 1930, after answers were filed, the chancellor ordered the receiver to return to Pick all of the property covered by its mortgage, with the exception of the items now in dispute. The right to the possession of these items was afterwards determined in the order from which the appeal has been taken. In September, 1928, defaults existed under the trust deed given by Granada to Chicago Trust Company and the former then applied for a new loan and a new trust deed was made in October, 1928, conveying the same property to Chicago Trust Company, as trustee, to secure bonds aggregating $525,000. Granada paid to Chicago Trust Company a five per cent commission for this new loan. All of the unpaid bonds secured by the 1924 trust deed, then aggregating about $440,000, were called at a premium, pursuant to the terms of the old trust deed, and were fully paid, the old trust deed was canceled and released of record, and all of the bonds and interest coupons secured by said

trust deed were also canceled. International and Industrial Securities Corporation is the assignee of Pick, and Central Republic Bank and Trust Company was substituted as party defendant and party respondent in place of Chicago Trust Company.

The five-story and basement apartment hotel building erected on the premises contained 122 suites, of pullmanette and dining kitchen types, and the property in controversy, Ozite, carpets, In-a-Dor beds and china and kitchen cases, was installed in the suites.

To quote from respondent's brief: ''Respondent's contentions are: I. That upon installation in the hotel premises the articles in controversy became real estate, first, because they cannot be removed without material injury to the structure and to themselves, and secondly, because they constitute integral parts of the completed structure; that being real estate and not being such articles as may be classified as chattels personal and removable or chattels real and irremovable, according to the intention of the parties making the annexation, the intent, as evidenced by the Pick chattel mortgage, that they should be removable, is by law ineffectual and insufficient to cause them to retain their character as personalty. II. That even if the articles are not such as upon installation became real estate, at least they are of the kind that may be classified as chattels personal and removable or chattels real and irremovable, according to intention, and that as against one claiming under a prior recorded real estate mortgage securing a construction loan, which by its terms covers some of the articles specifically and 'fixtures' generally, the intention as to whether the articles are chattels personal and removable or chattels real and irremovable must be determined not by the subsequent chattel mortgage but merely by the mode of affixation, adaptability, damage in removal and other tests generally applied in the absence of expressed in-

tention; that, therefore, if the articles in controversy are not real estate and are of the above described type, respondent, as Trustee, under the 1928 refunding real estate mortgage will be subrogated to the lien of the 1924 real estate mortgage, which it paid off, with the understanding that it should receive a lien of equal priority to that of the mortgage paid off.''

Counsel for both parties agree that the leading case in Illinois on the question of fixtures is *Sword v. Low,* 122 Ill. 487. Therein the court states (p. 497): ''There seems to be great unanimity in the authorities, that things personal in their nature may retain their character of personalty by the express agreement of the parties, although attached to the realty in such manner as that, without such agreement, they would lose that character, provided they are so attached that they may be removed without material injury to the article itself, or to the freehold. It is not held that parties may, by contract, make personal property real or personal at will, but that where an article personal in its nature is so attached to the realty that it can be removed without material injury to it or to the realty, the intention with which it is attached will govern; and if there is an express agreement that it shall remain personal property, or if, from the circumstances attending, it is evident or may be presumed that such was the intention of the parties, it will be held to have retained its personal character. *Ford v. Cobb,* 20 N. Y. 344; *Eaves v. Estes,* 10 Kan. 314; *Coleman v. Lewis,* 27 Pa. 391; *Hunt v. Bay State Iron Co.,* 97 Mass. 279; *Richardson v. Copeland,* 6 Gray, 536; *Haven v. Emory,* 33 N. H. 66.'' The court further states (pp. 499–502): ''The rule as to trade fixtures between landlord and tenant, arising from the presumption that their annexation was accessory to the trade or calling of the tenant, and not to the land, is another illustration of the rule that the intention with which the annexation

is made will control as to whether the article attached has become a permanent fixture or not. This rule, manifestly, would not apply to such articles as enter into· and form parts of a structure appurtenant to land, such as lumber, stone and shingles, or to doors, windows and grates, and the like articles which are incorporated into the structure, for their removal would, *pro tanto* at least, be a destruction of the appurtenance. All these, and like articles thus used, lose their identity and become a necessary part of the building, fence, or other structure, and are clearly distinguishable from such articles as are or may be merely annexed to the freehold, or some appurtenant thereof, and which, retaining their individual characteristics, may be removed in their entirety, and without material injury. Such articles, although placed upon or even attached to the land, may or may not be fixtures, depending upon the mode of attachment and the intention of the parties. Such articles, as in the case of portable mills, engines, boilers, and the like, must, in the nature of things, be more or less firmly affixed to the soil, or some appurtenant thereto, before they can be put to the use for which they are designed. It may be conceded that such articles, even slightly affixed to the realty, will, in the absence of circumstances raising a contrary presumption, or evidence showing a contrary intention, be presumed to have been attached as permanent accessions to the soil; yet it is apparent, from the authorities, that however permanently attached, if removable without material injury, the intention, to be inferred from the circumstances, and the relation of the parties to each other and to the realty, or as shown by evidence, will be of controlling and decisive importance. . . . In respect to the character of evidence required to show that the chattel shall retain its character of personal property after its annexation to the freehold, the adjudged cases are

at variance. In some of them, of high authority, it is held that the execution and record of a chattel mortgage will, of itself, without any special agreement that the chattel shall retain its personal character, be sufficient to prevent the article from attaching as a permanent fixture. (*Ford v. Cobb, supra; Eaves v. Estes, supra.*) In this case, as we have seen, it was expressly agreed that Marsh was to have a lien on the property, by chattel mortgage, to secure the purchase price until paid, which brings the case within the rule as announced by the great weight of authority. We think that where the mortgagor and mortgagee agree that the property shall be treated as personalty, and the mortgagor covenants that it shall be subject to seizure and sale as a chattel upon the maturity and nonpayment of the debt, and where the character of the article and mode of attachment are such that it may be removed without material injury to the freehold, the article retains its character as a chattel and does not become a part of the realty.'' In *Kelly v. Austin,* 46 Ill. 156, the court said (p. 158): ''While the intention alone will not always determine whether such structures are real or personal estate, it will have a controlling influence in cases of doubt.'' (See also *Ellison v. Salem Coal & Mining Co.,* 43 Ill. App. 120, 126.) In *Berger v. Hoerner,* 36 Ill. App. 360, the court said (p. 362): ''In cases of doubt *great weight* must be given to the actual or presumed *intention* of the parties enacting or placing the articles claimed as fixtures. *Doodey v. Crist,* 25 Ill. 551; *Kelly v. Austin,* 46 Ill. 156; *Ogden v. Stock,* 34 Ill. 522; *Otis v. May,* determined by this court May term, 1889, which was affirmed by the Supreme Court October, 1889; see also Ewell on Fixtures, Sec. 290, Landlord and Tenant; see also *Calumet Iron and Steel Co. v. Lathrop,* determined by this court opinion filed May term, 1890, and cases cited.'' In *In re Danville Hotel Co.,* 38 F. (2d) 10, the court

said (p. 23): ''There can be no question about the original intention of the hotel company and the bondholders. They considered the furnishings personalty, for the hotel company gave a chattel mortgage upon it, and the bondholders received the mortgage.'' (See also Bronson on Fixtures, 144 and 145. To the same effect is Jones on Chattel Mortgages, 5th ed., sec. 125.)

In the instant case the chattel mortgage from Granada to Pick is a part purchase money chattel mortgage and it enumerates and describes each item covered by the mortgage, including the items now in dispute. It provides, *inter alia,* that it shall be lawful for the mortgagor to retain possession of the goods and chattels and use the same until it shall make default in the payment of the indebtedness secured thereby; that the mortgagor covenants and agrees that upon any default or upon the happening of any contingency specified therein, the mortgagee shall have the right to take immediate possession of the property or any portion thereof, and for that purpose pursue the property wherever it might be found, and might enter any of the premises of the mortgagor, with or without force or process of law, and, if found, to take possession of the property. Many authorities might be cited to the effect that the giving of a chattel mortgage expresses the agreement and intention of the parties thereto that the property covered therein shall retain its character as personalty. Respondent admits that as between Pick, Granada and subsequent real estate mortgagees the Pick chattel mortgage is controlling.

There is force in the contention of petitioner that respondent, in January, 1925, after the Pick mortgage had been executed, treated the items now in dispute as goods and chattels by taking a chattel mortgage on them, and that if it is not estopped to now claim them as part of the realty, its action in that regard at least affords very strong evidence against it that the prop-

erty was not and is not real estate; that by the very terms of its chattel mortgage it took the property subject to such part purchase money chattel mortgages "as may have been heretofore duly executed and entered of record." In *Hewitt v. General Electric Co.*, 164 Ill. 420, the dispute was between the chattel mortgagee of certain materials and equipment for a mine and the owner of the real estate, who had leased the premises to a coal company that had purchased the equipment and materials in dispute, and the landlord was claiming that the items in dispute were part of the realty, and the court said (p. 424): "Hewitt (the landlord) sued out an attachment before a justice of the peace against the Benton Coal Company, and levied on the mortgaged property as personal property. Hewitt's act may be regarded as strong evidence against the lessor that the property was not real estate. *Long v. Cockern*, 128 Ill. 29, seems to be in point on this question. It was there held that the institution of a replevin suit by the vendor, if it did not estop him to claim the property as a part of the realty, afforded very strong evidence against him that the property was not real estate. So here, the levy upon the property by the lessor as personal property may be regarded as strong evidence it regarded the property personal and not real estate." *Fifield v. Farmers' Nat. Bank*, 148 Ill. 163, and *In re Danville Hotel Co.*, 33 F. (2d) 162, cited by respondent, do not hold that the act of taking a chattel mortgage is not evidence against the party taking it that he considered and treated the property in question as personalty. In the *Fifield* case the court found that it was clear that the parties intended that the fixtures should remain as a part of the plant, and therefore the court did not regard the taking of the chattel mortgage "as an important element in the case." It will be noted that Mr. Justice Craig, who wrote the opinion in that case, afterwards wrote

the one in *Hewitt v. General Electric Co., supra.* Each case, of course, must stand upon its own facts.

Petitioner contends that the mere execution of a chattel mortgage, of itself, without any express agreement that the property covered thereby shall retain its personal character, will be sufficient to prevent such articles from attaching as permanent fixtures as against a subsequent mortgagee of the real estate. It is undoubtedly true that if the items in question may be removed without material injury to the property and respondent is merely a subsequent mortgagee of the real estate, it is bound by the Granada-Pick chattel mortgage and by the intention of the parties thereto to treat all of the property conveyed as personalty. (See *Sword v. Low, supra;* 26 C. J. on Fixtures, secs. 46 and 48; 13 A. L. R. 481.) In Jones on Chattel Mortgages (5th ed.) sec. 125, the author says: "The Courts of a few States, particularly those of New York and Illinois, accord very great efficacy to the mortgagor's agreement that fixtures shall remain chattels, so as to give effect to a chattel mortgage of them, as against subsequent purchasers and mortgagees of the land."

Petitioner also contends that even if respondent, under its theory of subrogation, be held to have acquired its rights under the original real estate mortgage, it would be in no better position than if it were held to be a subsequent mortgagee. Respondent's reply to this contention is as follows: "Where a prior *construction* loan is made upon the faith and security of 'fixtures' which are to be thereafter installed in a building to be erected and the real estate mortgage specifically covers 'fixtures' and specifically enumerates them, and the real estate mortgage is recorded, any person thereafter placing 'fixtures' within the building is charged with notice of the provisions of the real estate mortgage and of the fact that the loan is made upon the faith and security of the prior

lien which shall attach thereto in favor of the real estate mortgagee.'' Respondent states that it uses the term ''fixtures'' in the following sense: ''Articles affixed to realty which do not form an integral or indispensable part thereof and which may be removed and separated from the realty without material damage either to the real estate or to the article itself.'' We shall refer to certain of the authorities cited by petitioner in support of its contention: In 26 C. J., on Fixtures, it is said (p. 684, sec. 49): ''An agreement that an article or structure attached to the realty shall be removable or shall remain personalty, whether expressed, or merely implied from the making of a chattel mortgage thereon, the conditional character of a sale thereof, or its annexation under license, is ordinarily given full effect as against a mortgage of the realty made previous to annexation, in so far as this will not interfere with the security of such mortgage, the mortgagee not having been misled and having advanced nothing on the faith of such annexation.'' In the same volume (p. 685, sec. 50) it is said: ''The fact that the mortgage in terms covers after-acquired property, while occasionally referred to in support of a decision giving priority to such mortgage, as against the claim to a chattel annexed, does not appear, even in such cases, to be a controlling factor in the decision, while in other cases it is accorded absolutely no weight. Likewise a provision in the mortgage that articles annexed shall become part of the realty has been regarded as inoperative as against the claim to the article as a chattel.'' In Jones on Chattel Mortgages (5th ed.) sec. 133a, it is said: ''One already holding a mortgage of the realty has no equitable claim to chattels subsequently annexed to it. He has parted with nothing on the faith of such chattels. Therefore the title of a conditional vendor of such chattels, or of a mortgagee of them before or at the time they were

attached to the realty, is just as good against the mortgagee of the realty as it is against the mortgagor. . . . 'But it is difficult to perceive,' continue the court, 'any equitable ground upon which the property of another which the mortgagor annexes to the mortgaged premises, should inure to the benefit of a prior mortgagee of the realty. The real estate mortgagee had no assurance, at the time he took his mortgage, that there would be any accession to the mortgaged property. . . . There is, therefore, no inequity towards the prior real estate mortgagee, and there is equity towards the mortgagee of the chattels, in protecting the lien of the latter to its full extent, so far as it will not diminish the security of the former. As already remarked, the real estate mortgagee is entitled to any annexation made by his mortgagor of his own property, but is not entitled to the property of others. . . .' (*Campbell v. Roddy*, 44 N. J. Eq. 244.)" In 13 A. L. R. it is said (pp. 460 and 461): "There is a difference of opinion as to the right of a prior mortgagee of realty to claim property as a fixture, as against the seller thereof, who claims it as personalty. Although the preponderance of opinion favors the equitable rule that unless the property sold has become an integral part of the realty, or (what is practically the same thing) unless its removal would seriously injure the premises, the seller thereof, retaining title thereto, or taking back a chattel mortgage thereon, may assert his lien as against a mortgagee of the realty whose lien was in existence at the time of the annexation. . . . The preponderance of authority is to the effect that, where the removal of the fixture will not materially injure the premises, a seller thereof retaining title thereto may assert his right as against a prior mortgagee of the realty." On page 466 the author says: "The fact that a prior mortgage of real estate contains a provision that it shall cover additions thereto does not give the mortgagee a superior claim to chattels annexed thereto as

against the vendor under a conditional-sale contract, since the after-acquired-property clause in a mortgage attaches only to such interest as the mortgagor has when the property comes into his hands." (See also *Ellison v. Salem Coal & Mining Co., supra,* pp. 126 and 127; *Andrews & Co. v. Chandler,* 27 Ill. App. 103, 109.) In *Holt v. Henley,* 232 U. S. 637, the court held that an automatic sprinkler system and equipment installed in a building retained its personal character in favor of a conditional sale vendor thereof as against a prior mortgagee of the real estate and also as against the trustee in bankruptcy of the company that purchased the sprinkler system. The equipment consisted of a 50,000 gallon tank on a steel tower bolted to a concrete foundation, pipes connecting the tank with the mill. The mortgage deed, executed November 23, 1909, covered the plant on the premises and that "which may be acquired and placed upon the said premises during the continuance of this trust." The installation of the system and equipment was begun December 6, 1909, and finished in the latter part of March, 1910. In its opinion the court said (p. 640): "To hold that the mere fact of annexing the system to the freehold overrode the agreement that it should remain personalty and still belong to Holt would be to give a mystic importance to attachment by bolts and screws. . . . We believe the better rule in a case like this, and the one consistent with the Virginia decisions so far as they have gone, is that 'the mortgagees take just such an interest in the property as the mortgagor acquired; no more no less.'" In Bronson on Fixtures, pages 148 to 150, the writer says: "Many of the courts, particularly in some late decisions, have strongly asserted the rule that the prior mortgagee (of the realty) in such a case, has no claim to the fixture annexed under an agreement. For this the equitable reason is advanced that the mortgagee has not been misled by the agreement, nor advanced anything upon the faith of it,

nor has his security been impaired by reason thereof, and hence he ought not to be permitted to avail himself of it as a part of his security, contrary to the intention of the party making the annexation. Then, again, a further equitable reason is given that the mortgage attaches to only such property or interests in property as the mortgagor himself acquires, and therefore chattels that are placed upon land under agreements as aforementioned pass to the prior mortgagee under the same conditions, and subject to the same liens, as when in the mortgagor's hands.''

In *Fifield v. Farmers' Nat. Bank, supra,* relied upon by respondent, the court held that under the particular facts of that case the machinery in dispute became part of the realty because it was installed in the building with the intention that it should remain a part of the same. Nor can we agree with the contention of respondent that *Sword v. Low, supra,* by inference, supports its position that when Pick placed the fixtures in the building it was charged with notice of the provision in the mortgage and that a prior lien in favor of respondent at once attached by virtue of the same. In the instant case the property in dispute was not in existence at the time of the making of the original mortgage and was not sold and delivered to Granada until a number of months later, and the building had not been erected at the time the mortgage was executed. The provision in the original mortgage upon which respondent relies conveyed ''any and all other fixtures that might be then in any building or that might be placed in any building then or thereafter standing on said premises.'' The argument of respondent, carried to its logical conclusion, amounts to this, that if at any time during the life of its mortgage a party sold to Granada any fixture and installed the same in a building erected upon the premises, after the making of the mortgage, he could not, by any precaution he might take, cause the property to retain its

character of personalty, even though it might be removed without material injury to the building, because by reason of the said provision in the mortgage a prior lien in favor of the real estate mortgagee attached the moment the fixture was installed in the building. We cannot agree with this contention. Such a rule would disregard the property rights of others. In our judgment respondent stands in the shoes of Granada. The trend of modern decisions is in favor of a more liberal construction in holding fixtures personalty. (See *Sword v. Low, supra,* 503; *Baker v. McClurg,* 198 Ill. 28, 34, 35; *Hewitt v. General Electric Co., supra; Ellison v. Salem Coal & Mining Co., supra; Andrews & Co. v. Chandler, supra; Ward v. Earl,* 86 Ill. App. 635.) Decisions almost without number might be cited wherein this trend is recognized.

The argument of respondent that the fixtures were an essential, indispensable part of the completed structure, contemplated by the plans and specifications and the mortgage, and should therefore be considered part of the realty, is answered in *Detroit Steel Cooperage Co. v. Sistersville Brewing Co.,* 233 U. S. 712, wherein the court says (p. 716): "The main question now before us is whether this case is to be decided differently on the ground that the tanks were 'an essential indispensable part of the completed structure contemplated by the mortgage,' a question left open in the former decision. 232 U. S. 641. The tanks were essential to the working of the brewery, and after they were installed the opening into the recess in which they stood was bricked up. It may be assumed that they became part of the realty as between mortgagor and mortgagee, but that is immaterial in equity, however it may have been at the old common law. The question is not whether they were attached to the soil, but we repeat, whether the fact that they were necessary to the working of the brewery gives a preference to the mortgagee. We see no sufficient ground for that result.

This class of need to use property belonging to another is not yet recognized by the law as a sufficient ground for authority to appropriate it. If the owner of the tanks had lent them it would be an extraordinary proposition that it lost title when they were bricked in.'' To the same effect are 26 C. J. 687; Ewell on Fixtures, p. 26; Tyler on Fixtures, p. 109; *Hanson v. Vose,* 144 Minn. 264, 175 N. W. 113. From a reading of the authorities it would seem that proof of adaptability and necessity merely bears upon the question of the intention of the parties.

There remains for consideration the question of fact as to whether or not the articles in dispute are so annexed or attached to the building that they may be removed without material injury to the building. The In-a-Dor beds rested in sockets on the doors, and by lifting the beds an inch or two they could be withdrawn from the sockets. In its brief respondent admits that the beds could be removed without material injury either to the structure or to the articles themselves. In the oral argument respondent made the same admission as to the carpets. The apartments had an unfinished concrete flooring, and Ozite, a heavy padding, was glued to this flooring. It cannot be contended that the removal of the Ozite would injure the concrete floor, and while the removal of this padding might cause some injury to it, respondent would not suffer thereby. In *Baker v. McClurg, supra,* the court said (p. 35) : ''Upon principle, it would seem that the mere fact that its removal may cause some injury to the fixture itself, though not injuring the freehold, ought not to destroy the right. The landlord is not affected by an injury done by the tenant to the latter's own property. It may still be valuable to the tenant, even though he be put to extra expense to repair or rebuild; and if, when the trade fixture was erected, the tenant, by his conduct, manifested the intention to retain ownership and remove it at the end of the lease, it appears that such intention should control even if

such removal necessitates a re-construction of the fixture. (Ewell on Fixtures, p. 96.)'' In Bronson on Fixtures, pp. 72 and 73, the author says: ''However, in the case of trade fixtures, the weight of authority does not seem to consider the destruction of the chattel about to be removed as a material element in determining its removability, although taken into consideration as a factor in ascertaining the intention of the parties. . . . It means that in the removal of a chattel no substantial injury shall be done to the realty,—nothing shall be done to render the property inefficient or less subservient for that purpose.'' We have given very careful attention to the question as to whether or not the kitchen cases and china cases could ·be removed without material injury to the building and to the articles themselves. That these items in dispute are not such articles as enter into and form parts of a structure appurtenant to land, ''such as lumber, stone and shingles, or to doors, windows and grates and the like articles which are incorporated into the structure,'' seems quite clear to us. It appears that the trial court went to the premises and witnessed the removal of a kitchen case and a china case from a typical apartment, and we are satisfied, after giving full consideration to the facts bearing upon the question, that we would not be justified in disturbing his finding that all of the cases could be removed without material damage to the building or the cases. The authorities agree that the injury caused by removal must be material and substantial to prevent the article from retaining its character as personalty.

In the view that we have taken of this appeal we do not deem it necessary to consider several points that are urged and strenuously argued by petitioner in support of the instant decree.

The decree of the superior court of Cook county is affirmed.

*Affirmed.*

GRIDLEY, J., concurs.