Ottawa Public Finance Corporation and The First National Bank, Appellees, v. Blackley-Gould Corporation et al. John Gaudi, Appellant.

Gen. No. 8,927.

Opinion filed September 18, 1935.

WILHELM & WILHELM, of Ottawa, for appellant.

HIBBS & POOL, of Ottawa, for appellees.

MR. JUSTICE DOVE delivered the opinion of the court.

On February 17, 1932, the Ottawa Public Finance Corporation loaned to the Blackley-Gould Corporation $3,872. The note evidencing this indebtedness was executed by the Blackley-Gould Corporation and made payable to the order of The First National Bank of Ottawa, Illinois, trustee. To secure the payment of this note, which was payable in monthly instalments, the makers executed a chattel mortgage naming The First National Bank of Ottawa, Illinois, trustee, as mortgagee. The property covered by the chattel mortgage was machinery, appliances and equipment used by it in the business of dyeing and cleaning and described therein as follows, viz.: 1 Hoffman Pressing

Machine, Model B–C 05–39511; 1 "Pantex" Pants Pressing Machine, No. 3011; 2 F. W. Matcer & Co., Iron Pressing Boards; 1 F. W. Matcer & Co., Spotting Board; 1 Quincy Compressor Company Spray Gun and compressing unit for spotting board; 2 Patrick Steam Electric Hand Irons; 1 Monarch Return to Boiler System; 1 Rotary Machine Company Rug Scrubbing Machine, No. 20214; 1 Atwood Vacuum Cleaner; 1 Jas. Heffel & Co., Marine Boiler, No. EB6159; 1 Troy Dry Cleaning Machine, size 36 x 54, No. 37528; 1 Troy Dry Cleaning Machine, size 30 x 36, No. 36658; 1 F. M. Bowers & Sons Spotting Tub; 1 Galvanized Iron Dry Room; 1 Troy Premier Tumbler, size 42 x 42, No. 4800; 1 Voroclone Tumbler, size 32 x 40, No. D–945; 1 General Electric 10 H. P. Electric Motor, with automatic switch, Motor No. 97259; 1 Complete Glover Purifying System, consisting of 3 tanks above ground, with capacities as follows: 1000 gal., 300 gal., 2000 gal. respectively, and 3 tanks below ground with capacities as follows: 1400 gal., 700 gal., 300 gal., respectively, and 2 Rotary Pumps; 1 Master Strainer; 1, 3 Gang Valve Header; 1, 5 Gang Valve Header; 1 Nelson & Knieter Co., extractor equipped with electric motor. All line shafts, belts, pulleys and attachments used, operated and attached to the articles and equipment as above listed.

On January 30, 1934, the Blackley-Gould Corporation being indebted to John Gaudi in the sum of $3,200, executed and delivered to him a chattel mortgage covering the identical property above described. After the description of the property, this chattel mortgage contains the following statement, viz.: "some of the articles hereinabove described are fixtures real and consequently are not proper items to be included in the chattel mortgage."

On April 30, 1934, the Ottawa Public Finance Corporation instituted this suit in the circuit court of La Salle county. Subsequently and on June 15, 1934,

an amended complaint was filed, the Ottawa Public Finance Corporation and The First National Bank of Ottawa, Illinois, trustee, being named therein as plaintiffs and the Blackley-Gould Corporation, a corporation, J. A. Blackley, Grace Blackley and John Gaudi being named as parties defendant. This amended complaint alleged that the Blackley-Gould Corporation was engaged in the cleaning and dyeing business in Ottawa and that its place of business was located in a building owned by the defendant, John Gaudi, from whom it leased said building under a written lease which was made a part of the amended bill, and that the Blackley-Gould Corporation placed in said building all of the machinery, tools, appliances and equipment necessary for its use in its business of dyeing and cleaning. It is then alleged that on February 17, 1932, the Blackley-Gould Corporation was indebted to numerous creditors in the amount of $3,872 and that it owned no property other than the machinery and equipment which it had installed in its place of business; that John Gaudi knew the financial condition of the Blackley-Gould Corporation and knew that it was negotiating for a loan from the plaintiff, Ottawa Public Finance Corporation, and knew that if said loan was granted, it was to be secured by a chattel mortgage upon the machinery, tools and equipment of the Blackley-Gould Corporation. The amended bill then alleges that the Public Finance Corporation loaned to the Blackley-Gould Corporation on February 17, 1932 the sum of $3,872 and that the maker executed its note for that sum and the chattel mortgage as hereinbefore set forth. It is then alleged that the proceeds of said loan were paid to the creditors of the mortgagor, whereby the mortgagor was able to and did continue in business until January 30, 1934, when the defendant Gaudi took possession of the machinery, tools, appliances and equipment of his

tenant and evicted it from its place of business  It is then charged that Gaudi knew that the plaintiff finance corporation had loaned the money to the Blackley-Gould Corporation at the time the loan was made and knew that it had executed and delivered a chattel mortgage as in said complaint set forth and knew that the proceeds of said loan were used by the Blackley-Gould Corporation to pay its creditors.  It was then alleged that the plaintiff, The First National Bank of Ottawa, trustee, had, prior to the execution and delivery of said note and mortgage, entered into an agreement with the finance corporation to act as trustee in its behalf; that after the execution and delivery of said note and chattel mortgage, a copy of said chattel mortgage was delivered to The First National Bank of Ottawa and that it caused said trust to be set up and noted on its books and trust department and that it received for its services as such trustee the sum of $9; that the said bank has no interest in said note or chattel mortgage except as trustee for the use of the finance corporation, and that the finance corporation is the owner and holder thereof.  The amended bill then alleges the execution and delivery of the note for $3,200 and a chattel mortgage to secure the payment of the same on January 30, 1934, by the Blackley-Gould Corporation to Gaudi and avers that Gaudi took possession of said chattels and evicted the mortgagor.  The amended bill then alleges that the Blackley-Gould Corporation has defaulted in observing the covenants of said chattel mortgage on its part to be performed and the plaintiff finance corporation has declared the entire indebtedness represented by the note secured by its mortgage due and payable, that it is entitled to the possession of the property in said mortgage described and that Gaudi is unlawfully withholding the possession of said chattels from the plaintiff Ottawa Public Finance Corporation.  The prayer of the complaint is

that the rights of John Gaudi in the chattels be found and decreed by the court to be subsequent and junior to the rights of the finance corporation, that an account may be taken and the amount due the finance corporation ascertained, and that in default of the payment of said amount that the chattel property be sold under the direction of the court to satisfy the amount so found to be due the finance corporation.

John Gaudi answered, denying practically every allegation of the amended complaint and averring that the instrument referred to in the complaint was not a chattel mortgage, and alleging that the premises which he leased to the Blackley-Gould Corporation had been, for more than 25 years, used for a dyeing and cleaning establishment; that in February, 1930, Gaudi, at the request of the Blackley-Gould Corporation, erected a two-story brick addition to his building for the benefit of said corporation, which addition houses all of the items described in the chattel mortgage; that each item therein described is attached to and made a part of a steam system therein installed; that the several appliances are each connected by shafts, belts, pulleys and steam pipe fittings, and that each appliance is permanently attached to the real estate and cannot be removed without great damage to the building and its concrete walls and partitions; that the cost of removal of said appliances is in excess of their value; that to remove them will require the removal of a fire wall and an outside wall; that three tanks of the Glover Purifying system are below ground and underneath the north wall of the premises and in order to remove the same, the north wall will necessarily be destroyed. The answer further alleges that at the time the addition was built in the spring of 1930, it was agreed between Gaudi and the Blackley-Gould Corporation that a 10-year lease would be executed for the premises and on May 1, 1930, such a lease was executed with an

option to the lessee for an additional 10-year period; that the Blackley-Gould Corporation was in possession of the premises prior to the execution of the lease on May 1, 1930, and continued in possession thereafter until it surrendered possession of all property described in the chattel mortgage to Gaudi. In his answer, Gaudi further alleged that for many years he had been a creditor of the Blackley-Gould Corporation and, becoming fearful of its solvency, consulted his attorneys and in December, 1932, ascertained for the first time that the said Blackley-Gould Corporation had executed the instrument set forth in the original and amended bills; that his attorneys advised him that the chattel mortgage of the plaintiff was invalid and that the property therein described belonged to Gaudi as a part of his real estate; that he could protect himself by taking a similar chattel mortgage, which he did on January 30, 1934, at which time the relationship of landlord and tenant between the Blackley-Gould Corporation and Gaudi terminated, and the Blackley-Gould Corporation surrendered possession of all property described in the chattel mortgage to Gaudi at that time.

The defendants, other than Gaudi, defaulted. There was a hearing had in open court, which resulted in a finding that the various articles described in the finance corporation mortgage and the Gaudi mortgage were all articles adapted to and used solely for the purpose of dyeing and cleaning and useful only in the particular kind of business in which the Blackley-Gould Corporation had been engaged; that said property had, through a course of years, been treated by the Blackley-Gould Corporation and by Gaudi as chattel property, and not as a part of the building in which said property was located; that it was the intention of the parties that said property should continue to be chattel property and not a part of the realty and

that such property was a proper subject of a chattel mortgage; that the chattel mortgage executed to The First National Bank of Ottawa as trustee for the use of the finance corporation created a lien upon the property senior and superior to the one executed by the Blackley-Gould Corporation to Gaudi; that the finance corporation is entitled to possession of the chattels by the terms of its mortgage and that Gaudi should be directed to permit the finance corporation to enter upon the premises and into the building in which the property is located for the purpose of taking possession thereof, provided the finance corporation execute a bond in the sum of $5,000 payable to Gaudi and conditioned that the finance corporation should repair or replace any part or portion of the building in which the property is located which may be injured in the operation of removing said chattel property. The bond having been filed and approved as required, a decree was thereupon entered in accordance with these findings. The decree directed the sale of the chattel property to satisfy the amount found due the plaintiff, finance corporation, which was $2,794.94, and it is from this decree that John Gaudi brings the record to this court for review by appeal.

Rule 9 of this court provides that the brief of appellant shall contain, among other things, the errors relied upon for reversal. Counsel for appellant has made no attempt to comply with this very essential portion of Rule 9, and we would be justified in affirming the decree for that reason.

At the beginning of their argument, however, counsel for appellant state that there are two questions which arise upon this record. First, Has the Finance Corporation or the First National Bank of Ottawa any rights by virtue of the chattel mortgage sought to be foreclosed? Second, Was the property conveyed by this chattel mortgage personal property at the time of the execution of the mortgage which belonged to

the mortgagor or was it real property belonging to appellant?

FIRST

The evidence discloses that the Blackley-Gould Corporation borrowed from the finance corporation $3,872 and thereupon the Blackley-Gould Corporation, by its proper officers, executed the note and chattel mortgage in question and delivered the same to the Ottawa Public Finance Corporation. The evidence further discloses that four or five days prior to the execution of the mortgage, an officer of the finance corporation and an official of the First National Bank of Ottawa had a conversation regarding this note and mortgage and the bank agreed to act as trustee and fixed its fee at $3 for each instrument which named the bank as trustee where the bank was not expected to make collections but only to hold the documents and execute releases. A few days after the execution of the mortgage, the finance corporation delivered to the bank a copy thereof and out of the money loaned by the finance corporation to the Blackley-Gould Corporation, the finance corporation paid to the bank $9 for its services and the bank thereupon made records of the trust. As we understand counsel's argument, it is that this chattel mortgage being at all times the property of the Ottawa Public Finance Corporation was fraudulent, inasmuch as it named as mortgagee the First National Bank of Ottawa, trustee. Appellant argues that the word "trustee" following the word "Ottawa" in the mortgage is merely descriptive and that a chattel mortgage cannot secure any other debt than the one described therein; that the instant chattel mortgage describes a debt to the First National Bank of Ottawa, while it is conceded that the mortgagor was not indebted to that bank but the indebtedness secured by said mortgage was due the finance corporation and it, the finance corporation, was nowhere mentioned in any

of the provisions of said chattel mortgage. In support of this contention the cases of *Martin v. Sexton,* 112 Ill. App. 199, and *John Deere Plow Co. v. Hershbarger,* 260 Ill. App. 227, are cited. We have examined those cases and both of them are referred to in the opinion of this court in *Citizens State Bank v. Senesac,* 267 Ill. App. 288, where we said: "In our opinion the consideration of a chattel mortgage may move from a person other than the mortgagee, a proposition which would appear to be indisputable under elementary principles of contract law. There is no principle of law nor any reason in fact which makes it illegal for a debtor to transfer his property to a third person to be held for the security of his creditor." In the *Senesac* case it appeared that the mortgagor executed three notes to Fred H. La Rocque and named him as mortgagee. La Rocque had no personal interest in any of them and the same contention was there made as in the instant case, but this court sustained the mortgage saying: "In view of the authorities it would seem to be immaterial to whom the obligation ran, whether to Fred H. La Rocque or to those whom he represented, so long as there was an obligation of which no attempt is made to deny. It has been said that the essence of a chattel mortgage is the intention to transfer title to secure the performance of an obligation of the mortgagor. The transaction here in question was therefore a chattel mortgage. . . . It was undertaken in good faith, admittedly complying with all statutory formalities of acknowledgment and recording."

In the instant case the mortgage was duly signed and acknowledged by the mortgagor and thereafter recorded. Delivery to the finance corporation, the *cestui que trust,* was a sufficient delivery to make it effective. *Crocker v. Lowenthal,* 83 Ill. 579. The mortgagee accepted the trust, and in our opinion it was not illegal or fraudulent for the mortgagor to convey his property to the bank as trustee for the benefit of the party

which actually and in good faith loaned the mortgagor the money evidenced by the note which was correctly and accurately described in the mortgage.

## SECOND

Appellant insists that as owner of the freehold he owns the property described in appellee's chattel mortgage; that while his tenant purchased those trade fixtures, it installed them in appellant's property in such a way that they cannot be removed without material injury to appellant's building and that they are and were real and not personal property at the time the chattel mortgage was executed. Counsel for both parties concede that whether the several articles covered by appellee's chattel mortgage became permanent fixtures depends upon the intention of appellant, the owner of the building and the intention of his tenant the Blackley-Gould Corporation at the time appellant leased the premises to the Blackley-Gould Corporation. The lease itself, made in 1930, is silent upon this subject, and it is therefore necessary to ascertain the intention of the parties thereto from their conduct in the light of all the surrounding facts and circumstances. *Thuma v. Granada Hotel Corp.*, 269 Ill. App. 484.

The evidence discloses that the articles covered by the chattel mortgage constituted all of the machinery, appliances and equipment used by the Blackley-Gould Corporation in its business of dyeing and cleaning. These articles are usable only for that purpose and come within a class commonly known and designated as trade fixtures. Some of the articles of equipment were used by the Blackley-Gould Corporation in its business in 1923, when the real estate was purchased by Gaudi. The others were purchased and installed by the Blackley-Gould Corporation in the period of 1923–1930. In 1930, the Blackley-Gould Corporation removed the boiler in the plant and replaced it with a

new one. Appellant never made any claim to it and no claim of any kind was ever made by him to any of the machinery and equipment until some 10 days after he had accepted a chattel mortgage upon the very articles which he now claims belong to him as a part of his freehold.

The evidence further discloses that appellant knew that the Blackley-Gould Corporation had mortgaged its equipment and appliances to appellee in 1932, and in October or November of 1933 he called at the office of appellee finance corporation to ascertain whether the Blackley-Gould Corporation was keeping up its payments on the mortgage. The fact that appellee had a chattel mortgage was discussed by him and his attorney in 1934 prior to or about the time appellant acquired his chattel mortgage. The fact that appellant remained silent during all of this period of time and asserted no claim to the articles of equipment in question tends to prove that it was not his intention to claim such articles as a part of his real estate. Furthermore, with full knowledge of the character of the machinery and equipment of the Blackley-Gould Corporation and the manner of its attachment, and that appellee had a chattel mortgage thereon, appellant procured from his tenant a chattel mortgage on January 30, 1934. This mortgage contained an identical description of the machinery and equipment as contained in the chattel mortgage theretofore given by the Blackley-Gould Corporation to appellees. This act tends at least to prove that as between the landlord Gaudi, appellant here and the tenant, the mortgagor, the intention was that the articles of machinery and equipment were personal property and not real estate. The fact that there was inserted in the mortgage the statement that some of the articles were ''fixtures real'' does not alter the effect of it. Which ones were ''fixtures real'' is not stated. If any of them were, they should not have been included in the mortgage.

In their reply brief counsel for appellant state that the Hoffman Pressing Machine, the Pants Pressing Machine, the two Iron Pressing boards, the Spotting board, the Spray Gun for spotting board and compress unit, the two Patrick Steam Electric hand irons, the Rotary Rug Scrubbing Machine, the Atwood Vacuum cleaner, the Spotting Tub-Blower, the Electric Motor including automatic switch and the Extractor with electric motor can all be removed from the property without injury thereto. The lien of appellee's mortgage, therefore, as to these articles, is valid. The evidence further discloses that all of this equipment is contained in a one- and two-story brick building. The one-story portion was built in 1924 or 1925. In 1930 the two-story addition was built expressly for the use of the Blackley-Gould Company. Both are brick and tile, the one-story structure being 34 by 60 feet and the two-story structure is 25 by 60 feet and adjoins the one-story section. The two-story building was used for pressing and spotting and all the equipment can be removed through the doorways. Some of the articles are attached to the wooden floor of the upper story by screws and bolts. There are three rooms in the one-story part, the boiler room, dry cleaning room and rug cleaning room. The partitions are of hollow tile and were put in before the boiler was put in, but after the tanks had been placed. The boiler room was formerly used as a four-car garage, with large doors in the outside wall. Above the doors was a steel beam, 16 or 18 feet long, which supported the walls and roof above the door opening. The old boiler was removed through this door and the new boiler moved in and thereafter the opening was closed with a brick wall, the steel beam remaining.

Furthermore, in many cases it has been held that the giving and taking of a chattel mortgage expresses an agreement and an intention of the parties that the property covered therein shall retain its character as

personal property. In the case of *Sword v. Low,* 122 Ill. 487, the court says that it has been held: "that the execution and record of a chattel mortgage will, of itself, without any special agreement that the chattel shall retain its personal character, be sufficient to prevent the article from attaching as a permanent fixture." In the case of *Thuma v. Granada Hotel Corp., supra,* it is stated that the trend of modern decisions is in favor of increased liberality in holding fixtures to be personalty. The case of *Sword v. Low, supra,* and many others were reviewed, and in the course of its opinion the court said: "Many authorities might be cited to the effect that the giving of a chattel mortgage expresses the agreement and intention of the parties thereto that the property covered therein shall retain its character as personalty."

In the instant case the chattel mortgage executed by the Blackley-Gould Corporation on January 30, 1934, and which was accepted by appellant was on a standard chattel mortgage form, referred to the property therein described as goods and chattels in numerous places, provided that it should be lawful for the mortgagor to redeem possession of the goods and chattels therein described, until it made default in paying the indebtedness which the mortgage was given to secure and gave appellant, as mortgagee, the right to enter the premises where the chattels were located and to remove said property therefrom. Certainly appellant, prior to accepting this chattel mortgage, never considered that his tenant had made a permanent accession to his property or he would not have accepted this chattel mortgage. If appellant, as his counsel insists, became the owner of these fixtures in 1930, why did he on January 30, 1934, accept, as mortgagee, a chattel mortgage upon property which he now insists that he himself then owned? In our opinion the acceptance of this chattel mortgage in 1934, containing

the provisions it did, certainly manifested an intention that the property in controversy here should retain its character of personalty even though annexed to and used as a part of the realty.

In *Baker v. McClurg*, 198 Ill. 28, it appeared that the complainants leased to the defendants certain premises to be used as a bakery. Upon taking possession of the premises under their lease, the lessees erected three ovens, and also placed therein an engine, boiler, shafting, pulleys and wheels. Prior to the expiration of the lease, the defendants commenced to remove the ovens and fixtures, whereupon the owners of the building instituted proceedings to restrain them from so doing. In affirming the decree of the circuit court, which dissolved a temporary injunction and dismissed the bill, the Supreme Court adopted the opinion of the Appellate Court which stated that the rule in Illinois is liberal in favor of the tenant and that as between him and the landlord, removable trade fixtures may include all erections made for the purposes of trade during tenancy. The court cited Ewell on Fixtures at page 96, where it is said that if when a trade fixture was erected, the tenant, by his conduct, manifested the intention to retain ownership and remove it at the end of the lease, such intention should control even if such removal necessitates a reconstruction of the fixture. In answer to the contention that the building would be injured by their removal, the court said that the removal of one of the ovens would leave the original openings in the two floors and also in the cement floor of the basement "but these," said the court, "were left when the building was erected, and if they should be filled in by the tenants to correspond with the rest of the building, as may be the latter's duty in equitable compliance with their covenants, it is difficult to see wherein the freehold would be injured. It is also true, doubtless, that the brick struc-

ture of the ovens, when removed, would have to be taken down brick by brick; but this need not be injurious to the building or premises if the work should be properly done.''

In *Moore v. Smith*, 24 Ill. 513, it was held that distillery pipes and machinery are trade fixtures which may be removed by the tenant and in its opinion the court said the majority of cases hold that all erections made for the purposes of trade, during the tenancy, such as soap vats, fire engines to work a colliery, pans used in manufacturing salt, brewhouses, furnaces and coppers, greenhouses, hothouses erected by nurserymen and gardeners may all be removed by the tenant.

In the instant case all of these trade fixtures were purchased by the Blackley-Gould Corporation and placed in and affixed to appellant's building, and from the evidence in this record we are satisfied that the tenant never intended to make a permanent accession to his landlord's property. That the tenant considered that it was the owner of these trade fixtures is evidenced by the fact that it made two chattel mortgages thereon.

Counsel for appellant particularly call our attention to the case of *Cross v. Weare Commission Co.*, 153 Ill. 499, and insist that the holding in that case supports their contention. That case was a contest between an execution creditor and a mortgage creditor and involved a steam grain elevator. The plant consisted of an elevator, cribs and office located upon leased ground, together with an engine, boiler, machinery and scales, all firmly affixed to the realty. The court held that the interest of the mortgagors in the elevator plant as a whole was a chattel real, and therefore a proper subject matter of a real estate mortgage; that notwithstanding the fact that a blank form of a chattel mortgage was used, the instrument which they executed was a valid real estate mortgage and the mortgage

creditor was not estopped in that proceeding from asserting that the property mortgaged was not personal property. In its opinion the court said that it would construe the conveyance so as to give effect to the intention of the parties rather than defeat such an intention by a strict technical construction of the form of conveyance adopted. We fail to find anything in that case not in harmony with the conclusion we have reached.

Counsel for appellant concede that the majority of these trade fixtures can be removed from appellant's building without injury to the building and without injury to the articles themselves, but insist that the boiler and tanks cannot be removed without destroying a portion of the building. Upon this question the evidence does disclose that the old boiler was taken from the building through the opening which formerly constituted the doorway to the four-car garage. The present boiler was moved in the building through this same opening and the opening was then closed by brick but the supporting steel beam above the opening to support the walls above and the roof remained. The evidence is further that it may be necessary, in order to remove the boiler in its entirety, to take down the brick which were used to close the opening through which the boiler was taken into the building, but it clearly appears that this may be done without injury to the building or to any portion thereof, and appellant's freehold will not be materially injured by so doing.

The decree herein amply protects appellant's rights and freehold, it deprives him of nothing of which he is the owner, is equitable to all parties and should be affirmed.

*Decree affirmed.*